NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
JOSEPH B. WIDMAN
Assistant United States Attorney
Chief, Riverside Branch Office
SEAN D. PETERSON (Cal. Bar No. 274263)
SONAH LEE (Cal. Bar No. 246024)
Assistant United States Attorneys
Riverside Branch Office
        3403 10th Street, Suite 200
        Riverside, California 92501
        Telephone: (951) 276-6930/6924
        Facsimile: (951) 276-6202
        E-mail:    sean.peterson2@usdoj.gov
                   sonah.lee@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 16-401(A)-ODW |
|---|---|
| Plaintiff, | SECOND TRIAL MEMORANDUM |
| v. | Hearing Date: April 2, 2019 |
| JULIO CESAR GOMEZ, aka "Spanky," | Hearing Time: 9:00 a.m. Location:   Courtroom of the              Hon. Otis D. Wright |
| Defendant. | |

        Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorneys Sonah Lee and Sean
D. Peterson, hereby files its trial memorandum.

///

///

///

1      Should any legal or factual issues arise that have not been

2   covered in this trial memorandum, the government respectfully

3   requests leave to submit such further memoranda as may be necessary.

4   Dated: March 26, 2019            Respectfully submitted,

5                                    NICOLA T. HANNA
                                     United States Attorney
6
                                     LAWRENCE S. MIDDLETON
7                                    Assistant United States Attorney
                                     Chief, Criminal Division
8
                                     JOSEPH B. WIDMAN
9                                    Assistant United States Attorney
                                     Chief, Riverside Branch Office
10
                                     _____/s/_____
11                                   SONAH LEE
                                     SEAN D. PETERSON
12                                   Assistant United States Attorneys

13                                   Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

TABLE OF AUTHORITIES.......................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES.........................................1

I.   CASE STATUS.............................................................1

II.  CHARGES.................................................................1

     A.   FIRST SUPERSEDING INDICTMENT.......................................1

     B.   ELEMENTS...........................................................2

          1.   CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE
               AND TO DISTRIBUTE METHAMPHETAMINE.............................2

          2.   DISTRIBUTION OF METHAMPHETAMINE...............................3

          3.   POSSESSION OF METHAMPHETAMINE WITH INTENT TO
               DISTRIBUTE....................................................3

          4.   FELON IN POSSESSION OF A FIREARM AND AMMUNITION...............4

          5.   POSSESSION OF A FIREARM IN FURTHERANCE OF A DRUG
               TRAFFICKING CRIME.............................................4

III. STATEMENT OF FACTS......................................................5

     A.   CASE IN CHIEF......................................................5

          1.   JANUARY 7, 2016 MEETING.......................................5

          2.   JANUARY 14, 2016 MEETING......................................5

          3.   FEBRUARY 17, 2016 MEETING.....................................6

          4.   JUNE 16, 2016.................................................7

     B.   ADDITIONAL FACTS...................................................8

          1.   CI 005 AND GOMEZ MET ON DECEMBER 17, 2015 WHERE
               THEY DISCUSSED FELLOW GANG MEMBERS AND MEXICAN
               MAFIA AFFILIATES..............................................8

          2.   CARMONA MET WITH QUEVEDO ON JANUARY 3, 2015 AT
               THE SANTA ANA JAIL WHERE CORRECTIONAL OFFICERS
               INTERCEPTED A LETTER QUEVEDO SENT CARMONA......................8

          3.   OFFICERS ARRESTED GOMEZ FOR POSSESSION OF A
               FIREARM AND AMMUNITION ON MARCH 22, 2016.......................8

IV.  LEGAL AND EVIDENTIARY ISSUES...........................................9

i

**<u>TABLE OF CONTENTS (CONTINUED)</u>**

<u>DESCRIPTION</u>                                                                                    <u>PAGE</u>

    A.   LEGAL ISSUES ASSOCIATED WITH CONSPIRACY...................9

         1.   OVERT ACTS OF THE CONSPIRACY........................9

         2.   KNOWLEDGE AND INVOLVEMENT IN THE CONSPIRACY........10

         3.   PROOF OF THE CONSPIRACY...........................11

         4.   CO-CONSPIRATOR'S STATEMENTS.......................11

    B.   LEGAL ISSUES ASSOCIATED WITH TITLE 21 OFFENSES..........13

         1.   POSSESSION........................................13

         2.   KNOWLEDGE.........................................13

    C.   RECORDINGS..............................................14

    D.   PHYSICAL EVIDENCE.......................................17

    E.   ADMISSION OF CERTIFIED CONVICTION RECORDS...............18

    F.   EXPERT WITNESSES........................................19

    G.   NON-EXPERT OPINION TESTIMONY OF AGENTS AND LAY
        WITNESSES..............................................23

    H.   ENTRAPMENT..............................................25

         1.   PROCEDURAL MATTERS................................25

         2.   ELEMENTS OF ENTRAPMENT............................26

             a.   PREDISPOSITION..............................27

             b.   GOVERNMENT INDUCEMENT.......................30

    I.   SENTENCING ENTRAPMENT...................................31

    J.   ENTRAPMENT AND FEDERAL RULE OF EVIDENCE 405.............33

    K.   CROSS EXAMINATION OF DEFENDANTS........................33

    L.   USE OF PRIOR CONVICTIONS TO IMPEACH DEFENDANT GOMEZ
        SHOULD HE TESTIFY......................................34

    M.   REBUTTAL TO DEFENDANTS' CHARACTER EVIDENCE..............35

    N.   RECIPROCAL DISCOVERY...................................35

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                PAGE

**FEDERAL CASES**

Bourjaily v. United States, 483 U.S. 171 (1987)....................12

Fitzpatrick v. United States, 178 U.S. 304 (1971)..................35

Gallego v. United States, 276 F.2d 914 (9th Cir. 1960)............19

Garlington v. O'Leary, 879 F.2d 277 (7th Cir. 1989)...............13

Hampton v. United States, 425 U.S. 484 (1976).....................27

Sendejas v. United States, 428 F.2d 1040 (9th Cir. 1970)..........12

Sorrells v. United States, 287 U.S. 435 (1932)................27, 31

United States v. Andersson, 813 F.2d 1450 (9th Cir. 1987).........21

United States v. Andreen, 628 F.2d 1236 (9th Cir. 1980)...........10

United States v. Barbosa, 906 F.2d 1366 (9th Cir. 1990)...........14

United States v. Bibbero, 749 F.2d 581 (9th Cir. 1984)............12

United States v. Black, 733 F.3d 294 (9th Cir. 2013)..............32

United States v. Black, 767 F.2d 1334 (9th Cir. 1985).........18, 36

United States v. Blackwood, 878 F.2d 1200 (9th Cir. 1989).........18

United States v. Brandon, 633 F.2d 773 (9th Cir. 1980)............26

United States v. Brooks, 473 F.2d 817 (9th Cir. 1973).............24

United States v. Browne, 829 F.2d 760 (9th Cir. 1987).............36

United States v. Buckner, 610 F.2d 570 (9th Cir. 1979)............10

United States v. Burresoh, 643 F.2d 1344 (9th Cir. 1981)..........11

United States v. Busby, 780 F.2d 804 (9th Cir. 1986)..........27, 28

United States v. Camacho, 528 F.2d 464 (9th Cir. 1976)............11

United States v. Campbell, 507 F.2d 955 (9th Cir. 1974)...........14

United States v. Carruth, 699 F.2d 1017 (9th Cir. 1983)...........11

United States v. Chen, 754 F.2d 817 (9th Cir. 1985)...............15

United States v. Chu Kong Yin, 935 F.2d 990 (9th Cir. 1991).......18

iii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

United States v. Collicott, 92 F.3d 973 (9th Cir. 1996)...........17

United States v. Collins, 764 F.2d 647 (9th Cir. 1985).............14

United States v. Cortes, 757 F.3d 850 (9th Cir. 2014)..26, 27, 32, 33

United States v. Cuozzo, 962 F.2d 945 (9th Cir. 1992)..............36

United States v. Douglass, 780 F.2d 1472 (9th Cir. 1986)..........11

United States v. Dunn, 946 F.2d 615 (9th Cir. 1991)................20

United States v. Dupuy, 760 F.2d 1492 (9th Cir. 1985)..............14

United States v. Echeverry, 759 F.2d 1451 (9th Cir. 1985).........13

United States v. Estrada, 39 F.3d 772 (7th Cir. 1994)..............25

United States v. Fernandez, 839 F.2d 639 (9th Cir. 1988)..........17

United States v. Freeman, 498 F.3d 893 (9th Cir. 2007)............19

United States v. Gadson, 763 F.3d 1189 (9th Cir. 2014)............25

United States v. Grayson, 597 F.2d 1225 (9th Cir. 1979)...........13

United States v. Gurolla, 333 F.3d 944 (9th Cir. 2003)........25, 28

United States v. Guzman, 849 F.2d 447 (9th Cir. 1988).............11

United States v. Hankey, 203 F.3d 1160 (9th Cir. 2000)............21

United States v. Harrington, 923 F.2d 1371 (9th Cir. 1991).....18, 19

United States v. Hegwood, 977 F.2d 492 (9th Cir. 1992)............38

United States v. Hoyt, 879 F.2d 505 (9th Cir. 1989)...........26, 27

United States v. Hursh, 217 F.3d 761 (9th Cir. 2000)..............36

United States v. Johnson, 735 F.2d 1200 (9th Cir. 1984)...........20

United States v. Kessee, 992 F.2d 1001 (9th Cir. 1993)............26

United States v. Kiriki, 756 F.2d 1449 (9th Cir. 1985)............12

United States v. Manarite, 44 F.3d 1407 (9th Cir. 1995)........29, 30

United States v. Marbella, 73 F.3d 1508 (9th Cir. 1996)...........28

iv

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                      PAGE

United States v. Matta-Ballesteros, 71 F.3d 754 (9th Cir. 1995),
        *modified by* 98 F.3d 1100 (9th Cir. 1996).....................15

United States v. McAllister, 747 F.2d 1273 (9th Cir. 1986)........14

United States v. Mejia, 559 F.3d 1113 (9th Cir. 2009).............32

United States v. Mendoza-Prado, 314 F.3d 1099 (9th Cir. 2002)..34, 38

United States v. Montgomery, 113 F.3d 1022 (9th Cir. 1997)........10

United States v. Mora, 876 F.2d 76 (9th Cir. 1989)................14

United States v. Murray, 751 F.2d 1529 (9th Cir. 1985)............10

United States v. Nixon, 418 U.S. 683 (1974).......................12

United States v. Ortega, 203 F.3d 675 (9th Cir. 2000).............17

United States v. Peltier, 693 F.2d 96 (9th Cir. 1982).............25

United States v. Phillips, 577 F.2d 495 (9th Cir. 1978)...........15

United States v. Pino-Noriega, 189 F.3d 1089 (9th Cir. 1999).......24

United States v. Reese, 775 F.2d 1066 (9th Cir. 1985).........10, 12

United States v. Reynoso-Ulloa, 548 F.2d 1329
        (9th Cir. 1977)...................................27, 28, 30, 31

United States v. Rhodes, 713 F.2d 463 (9th Cir. 1983).............27

United States v. Rrapi, 175 F.3d 742 (9th Cir. 1999)..............16

United States v. Saavedra, 684 F.2d 1293 (9th Cir. 1982)..........11

United States v. Sandoval-Mendoza, 472 F.3d 645 (9th Cir. 2006)....27

United States v. Saulter, 60 F.3d 270 (7th Cir. 1995).............25

United States v. Schmit, 881 F.2d 608 (9th Cir. 1989).............13

United States v. Shabani, 513 U.S. 10 (1994)......................10

United States v. Shapiro, 669 F.2d 593 (9th Cir. 1982)............27

United States v. Sherwood, 98 F.3d 402 (9th Cir. 1996)............21

United States v. Simas, 937 F.2d 459 (9th Cir. 1991)..............31

United States v. Skeet, 665 F.2d 983 (9th Cir. 1982)..............24

v

1                      **TABLE OF AUTHORITIES (CONTINUED)**

2     DESCRIPTION                                                    PAGE

3     United States v. Smith, 924 F.2d 889 (9th Cir. 1991)..............28

4     United States v. Spentz, 653 F.3d 815 (9th Cir. 2011).............31

5     United States v. Stauffer, 922 F.2d 508 (9th Cir. 1990)...........11

6     United States v. Taren-Palma, 997 F.2d 525 (9th Cir. 1993)........10

7     United States v. Thomas, 134 F.3d 975 (9th Cir. 1998).............34

8     United States v. Thomas, 887 F.2d 1341 (9th Cir. 1989)........11, 12

9     United States v. Tille, 729 F.2d 615 (9th Cir. 1984)..............13

10    United States v. Torres, 908 F.2d 1417 (9th Cir. 1990)............16

11    United States v. Traylor, 656 F.2d 1326 (9th Cir. 1981)...........11

12    United States v. Tuohey, 867 F.2d 534 (9th Cir. 1989).............10

13    United States v. Valencia-Amezcua, 278 F.3d 901 (9th Cir. 2002)....20

14    United States v. Valerio, 441 F.3d 837 (9th Cir. 2006)............16

15    United States v. VonWillie, 59 F.3d 922 (9th Cir. 1995)...........24

16    United States v. Williams, 989 F.2d 1061 (9th Cir. 1993).......12, 13

17    United States v. Young, 248 F.3d 260 (4th Cir. 2001)..............38

18    United States v. Yuman-Hernandez, 712 F.3d 471 (9th Cir. 2013)....33

19    United States v. Zavala-Serra, 853 F.2d 1512 (9th Cir. 1988).......13

20    **FEDERAL RULES**

21    Fed. R. Crim. P. 12.1.............................................38

22    Fed. R. Crim. P. 12.2.............................................38

23    Fed. R. Crim. P. 16(a)(1)(G).....................................21

24    Fed. R. Crim. P. 16(b)...........................................38

25    Fed. R. Crim. P. 26.2............................................38

26    Fed. R. Evid. 106................................................17

27    Fed. R. Evid. 404(a)(2)(A).......................................37

28    Fed. R. Evid. 404(b).............................................34

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                PAGE

Fed. R. Evid. 405(b)...............................................33, 34

Fed. R. Evid. 609(a)...................................................36

Fed. R. Evid. 701..................................................16, 24

Fed. R. Evid. 702......................................................21

Fed. R. Evid. 801(c)...................................................16

Fed. R. Evid. 801(d)(2)................................................17

Fed. R. Evid. 801(d)(2)(A).....................................16, 17, 18

Fed. R. Evid. 801(d)(2)(E).........................................12, 13

Fed. R. Evid. 901......................................................18

Fed. R. Evid. 901(a)...............................................15, 18

Fed. R. Evid. 901(b)(5)................................................16

Fed. R. Evid. 902(4)...................................................20

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.   CASE STATUS**

3
4
5
6
7
8
9

A jury trial is set for April 2, 2019, at 9:00 a.m. before the Honorable Otis D. Wright.  Defendant is in custody pending trial. The estimated time for the government's case-in-chief, including cross-examination, is three days.  The government anticipates calling Jesse Woolley, Ryan Monis, Paul Day, Chuck Cervello, CI-489, Manuel Ortiz, Heather Driever, and Trevor Equitz in its case-in-chief.  The government anticipates that all testimony will be in English.

10

**II.   CHARGES**

11

**A.   FIRST SUPERSEDING INDICTMENT**

12
13
14
15
16
17
18
19
20
21
22
23
24
25

On March 15, 2017, the Grand Jury issued a seven count First Superseding Indictment against defendant Julio Cesar Gomez ("GOMEZ"). Defendant GOMEZ was charged with conspiracy to possess with intent to distribute and to distribute methamphetamine, in violation of 21 U.S.C. § 846 (count one), distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) (count two), distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) (count three), possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (count five), felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) (counts four and six), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (count seven).

26
27
28

**B.   ELEMENTS**[1]

   1.   CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE AND TO DISTRIBUTE METHAMPHETAMINE

First, beginning on or about an unknown date and ending on or about January 14, 2016, there was an agreement between two or more persons to possess with intent to distribute and to distribute methamphetamine.

Second, defendant GOMEZ joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

"To distribute," means to deliver or transfer possession of methamphetamine to another person, with or without any financial interest in that transaction.

A conspiracy is a kind of criminal partnership—an agreement of two or more persons to commit one or more crimes.  The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy.  It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another.  The jury must find that there was a plan to commit at least one of the crimes alleged in the First Superseding Indictment as an object or purpose of the conspiracy with all members of the jury agreeing as to the particular crime which the conspirators agreed to commit.

---

[1] The elements are drawn the Ninth Circuit Model Criminal Jury Instructions on point: 8.65A, 8.72, 9.15 and 9.18, and 9.19.

One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who willfully joins an existing conspiracy is as responsible for it as the originators.  On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator.  Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

2.   DISTRIBUTION OF METHAMPHETAMINE

First, defendant GOMEZ knowingly distributed methamphetamine. Second, defendant GOMEZ knew that it was methamphetamine or some other prohibited drug.

"Distributing" means delivering or transferring possession of methamphetamine to another person, with or without any financial interest in that transaction.  The government is not required to prove the amount or quantity of methamphetamine.  It need only prove beyond a reasonable doubt that there was a measurable or detectable amount of methamphetamine.

3.   POSSESSION OF METHAMPHETAMINE WITH INTENT TO DISTRIBUTE

First, defendant GOMEZ knowingly possessed methamphetamine.

Second, defendant GOMEZ possessed it with the intent to distribute it to another person.

The government is not required to prove the amount or quantity of methamphetamine.  It need only prove beyond a reasonable doubt that there was a measurable or detectable amount of methamphetamine.

It does not matter whether defendant GOMEZ knew that the substance was methamphetamine.  It is sufficient that defendant GOMEZ knew that it was some kind of a federally controlled substance.

To "possess with intent to distribute" means to possess with intent to deliver or transfer possession of methamphetamine to another person, with or without any financial interest in the transaction.

    4.   <u>FELON IN POSSESSION OF A FIREARM AND AMMUNITION</u>

First, defendant GOMEZ knowingly possessed at least one of the firearms or ammunition identified in the count in question.

Second, the firearm or ammunition had been shipped or transported from one state to another or between a foreign nation and the United States.

Third, at the time defendant GOMEZ possessed the firearm or ammunition, defendant GOMEZ had been convicted of a crime punishable by imprisonment for a term exceeding one year.

    5.   <u>POSSESSION OF A FIREARM IN FURTHERANCE OF A DRUG TRAFFICKING CRIME</u>

First, defendant GOMEZ committed the crime of possession of methamphetamine with intent to distribute as charged in Count Five of the First Superseding Indictment.

Second, defendant GOMEZ knowingly possessed the Smith and Wesson, Model M&P, .40 caliber pistol, bearing serial number HSA8129.

Third, defendant GOMEZ possessed the firearm in furtherance of the crime of possession of methamphetamine with intent to distribute.

4

A person "possesses" a firearm if the person knows of its presence and has physical control of it, or knows of its presence and has the power and intention to control it.

**III. STATEMENT OF FACTS**

    **A.   CASE IN CHIEF**

The government intends to prove at trial the following facts, among others:

    1.   <u>JANUARY 7, 2016 MEETING</u>

On or about January 7, 2016, two confidential informants ("CIs"), CI 005 (also known as "Andy") and CI 489 (also known as "Gabe"), met with GOMEZ and co-defendant Angel Alejandro Carmona (also known as "Lil Criminal" ("CARMONA")) at a restaurant in Cathedral City, California.  During the meeting, GOMEZ and CARMONA agreed to sell methamphetamine and a firearm to CI 489 the following week.  The CIs recorded the meeting.  Among other things, during the meeting, GOMEZ said that STEVEN ANDREW GONZALEZ (also known as "Cubs" ("GONZALEZ")) had a firearm that he might be able to sell at the meeting the following week.

    2.   <u>JANUARY 14, 2016 MEETING</u>

On or about January 14, 2016, CI 005 and CI 489 met with GONZALEZ in front of his residence at 82723 Mountain View Avenue ("Mountain View Residence") in Indio, California.  A third CI, CI 006, stayed in the vehicle that the CIs used to drive to the Mountain View Residence.  GONZALEZ, CI 005 and CI 489 waited for GOMEZ and CARMONA to arrive.  While they waited, CI 005 and GONZALEZ spoke about where the "deal" would take place.  GONZALEZ told CI 005 that he (GONZALEZ) had already told GOMEZ where the deal would take place.

5

Once GOMEZ and CARMONA arrived, they then traveled in a vehicle with GONZALEZ to another nearby residence, 43299 Deglet Noor Avenue in Indio, California ("Deglet Noor Residence").  The CIs traveled in a separate vehicle from the Mountain View Residence to the Deglet Noor Residence.  Inside the Deglet Noor Residence, GOMEZ, GONZALEZ, and CARMONA sold approximately 108.1 grams of methamphetamine to CI 489.  CARMONA also sold CI 489 a firearm.  During the meeting, CI 489 provided GOMEZ with CI 489's telephone number, and they discussed future drug and firearm sales.  The CIs recorded the meeting.

        3.    FEBRUARY 17, 2016 MEETING

On or about February 17, 2016, CI 489 met with GOMEZ at a highway rest stop in Whitewater, California.  Prior to the meeting, CI 489 and GOMEZ exchanged text messages and telephone calls.  Among other things, during one call, GOMEZ asked CI 489 if CI 489 wanted a whole pound of methamphetamine rather than the half-pound of methamphetamine that CI 489 and GOMEZ had previously discussed.  CI 489 told GOMEZ that he did not have enough money for a whole pound of methamphetamine, and GOMEZ told CI 489 that he had another buyer for the additional half-pound of methamphetamine.

During the recorded meeting, CI 489 bought approximately 219.3 grams of methamphetamine and a Smith and Wesson, MP 15-22, .22 caliber rifle, with an obliterated serial number, from GOMEZ.  During the meeting, CI 489 asked how much GOMEZ would charge for a pound of methamphetamine.  Gomez told him "three flat" (i.e., $3,000).  They agreed to talk again.

The following day, CI 489 called GOMEZ by telephone and asked him about the obliterated serial numbers on the firearm.  GOMEZ consulted with a third party and then told CI 489 that the serial

1   numbers had been obliterated because it was stolen from someone, but
2   that it was otherwise "clean."
3         About a week later, on or about February 24, 2016, CI 489 and
4   GOMEZ spoke about a potential methamphetamine and "toy" (i.e.,
5   firearm) sale.  GOMEZ told CI-489 that "we" have an "old-school"
6   firearm, but "we" could not get it to work.  GOMEZ agreed to sell CI
7   489 another half-pound of methamphetamine ("with the other thing you
8   said, uh, the same thing as last time, right") and a firearm, the
9   following Tuesday afternoon.  However, there was no subsequent
10  meeting or sale between CI 489 and GOMEZ.
11             4.   JUNE 16, 2016
12        On June 16, 2016, law enforcement agents arrested GOMEZ at 31720
13  Calle Helene, Thousand Palms ("Calle Helene Residence").  Law
14  enforcement agents found GOMEZ inside a locked bedroom at the Calle
15  Helene Residence.  An adult female, Ferial Victoria Awad Vertucci,
16  and her small child were also in the room with GOMEZ when law
17  enforcement agents arrived.  In a black bag at the foot of the bed
18  agents found a loaded Smith & Wesson, model M&P .40 caliber pistol.
19  Also next to the bed, agents found a different black bag containing a
20  box with 38 rounds of .40 caliber ammunition and three "kites" (i.e.,
21  small pieces of paper with small writing on them).  In a separate bag
22  next to the bed agents found 3.23 grams of methamphetamine.  On top
23  of the dresser agents found two rounds of ammunition.  On the top
24  shelf of the closet, agents found two .40 caliber magazines.
25        Later that day, agents visited GOMEZ's bedroom at his official
26  residence, 80000 Ave 48, Space #193, Indio.  In the bedroom agents
27  found a page of a Riverside County Sheriff's Department report
28  listing CARMONA and Raymond Quevedo as Mexican Mafia associates and

7

as target subjects in a criminal investigation.  They also found GOMEZ's identification card, handwritten notes on parole law, photographs, and a notepad with names, phone numbers, and additional numbers.

**B.   ADDITIONAL FACTS**

Plaintiff may offer the following additional facts into evidence, depending on the presentation of the defense case, and specifically depending on whether defendant pursues an entrapment defense.

1.   CI 005 AND GOMEZ MET ON DECEMBER 17, 2015 WHERE THEY DISCUSSED FELLOW GANG MEMBERS AND MEXICAN MAFIA AFFILIATES

On December 17, 2015, CI 005 met with GOMEZ at a restaurant in Indio, California.  At this meeting, among other things, they discussed fellow gang members and Mexican Mafia associates.  GOMEZ showed CI 005 a Christmas card including a note from made Mexican Mafia member David Fiero.  CI 005 took a picture of the card and provided the picture to the investigators.

2.   CARMONA MET WITH QUEVEDO ON JANUARY 3, 2015 AT THE SANTA ANA JAIL WHERE CORRECTIONAL OFFICERS INTERCEPTED A LETTER QUEVEDO SENT CARMONA

On January 3, 2015, CARMONA visited inmate Quevedo at the Santa Ana Jail.  Officers at the jail intercepted a letter that Quevedo passed to CARMONA.  Among other things, the letter states: "Bam-Bam de Palm Springs put a Luz on Pecas & Spanky for disrespecting Bam & his Senora & for using carnales names without their permission."

3.   OFFICERS ARRESTED GOMEZ FOR POSSESSION OF A FIREARM AND AMMUNITION ON MARCH 22, 2016

On or about March 22, 2016 officers conducted surveillance of two individuals standing near a sedan in a parking lot in Coachella.

8

They saw a third individual, later identified as GOMEZ, approach the two individuals and show them "a large sum of money" he had in his hands.  A law enforcement officer later stopped the sedan.  GOMEZ was sitting in the back seat of the car when it was stopped.  Once GOMEZ exited the vehicle, officers observed money in the backseat area where GOMEZ had been sitting.  They also found two loaded handguns, behind a cloth covering in the center armrest area of the rear seat.

## IV.  LEGAL AND EVIDENTIARY ISSUES

### A.  LEGAL ISSUES ASSOCIATED WITH CONSPIRACY

The essential elements of the charged offenses are as set forth above.  The United States submits the following authority to address the law of conspiracy as pertinent to any arguments which may be raised at trial.

#### 1.  OVERT ACTS OF THE CONSPIRACY

The government need not prove that an overt act was committed to prove that the conspiracy existed.  United States v. Shabani, 513 U.S. 10, 15 (1994); see also, United States v. Montgomery, 113 F.3d 1022 (9th Cir. 1997).  Conversely, while the government is not required to prove an overt act in furtherance of the conspiracy, the Supreme Court has recognized that evidence of overt acts is still admissible at trial, because it "tend[s] to show the criminal agreement for the conspiracy."  Shabani, 513 U.S. at 13.  The overt act need not be criminal, in and of itself, because its evidentiary function is to demonstrate that the conspiracy is operative.  United States v. Tuohey, 867 F.2d 534, 537 (9th Cir. 1989); United States v. Andreen, 628 F.2d 1236, 1248 (9th Cir. 1980); United States v. Buckner, 610 F.2d 570, 573 (9th Cir. 1979).

2.   <u>KNOWLEDGE AND INVOLVEMENT IN THE CONSPIRACY</u>

A conspiracy is an agreement to commit a crime.  <u>See</u> Ninth Circuit Model Jury Instruction, No. 8.16 (2010 ed.).  It is not necessary to show that the crime itself was in fact committed.  <u>Id</u>. The government must only show that the defendant agreed with at least one other person to commit the crime charged.  <u>United States v. Reese</u>, 775 F.2d 1066, 1071 (9th Cir. 1985); <u>United States v. Murray</u>, 751 F.2d 1529, 1534 (9th Cir. 1985).  The government is not required to prove that every person alleged to have been a member of the conspiracy actually participated in it, or that all members of the conspiracy knew or were aware of all other members of the conspiracy or acts committed in furtherance of the conspiracy.  <u>United States v. Taren-Palma</u>, 997 F.2d 525, 530 (9th Cir. 1993).

A single conspiracy may exist even though each defendant plays a different role in it.  <u>United States v. Burresoh</u>, 643 F.2d 1344, 1348 (9th Cir. 1981); <u>United States v. Camacho</u>, 528 F.2d 464, 470 (9th Cir. 1976).  Each defendant also need not participate in all of the overt acts in a conspiracy.  <u>Id</u>.  Once a conspiracy is proven, evidence establishing the defendant's connections to that conspiracy – even if the connection is slight – is sufficient to convict him of knowingly participating in the conspiracy.  <u>United States v. Stauffer</u>, 922 F.2d 508, 514-15 (9th Cir. 1990); <u>United States v. Guzman</u>, 849 F.2d 447, 448 (9th Cir. 1988).

A defendant is vicariously liable for the substantive acts of his co-conspirators whether or not he directly participates in such acts, so long as those acts are committed in furtherance of the conspiracy and the substantive offense fell within the scope of the unlawful project and could reasonably have been foreseen as a

10

necessary or natural consequence of the unlawful agreement.  United States v. Thomas, 887 F.2d 1341, 1345 (9th Cir. 1989); United States v. Douglass, 780 F.2d 1472, 1475-76 (9th Cir. 1986).  A conspirator who joins a pre-existing conspiracy is bound by all that has gone on before in the conspiracy.  United States v. Saavedra, 684 F.2d 1293, 1301 (9th Cir. 1982); United States v. Traylor, 656 F.2d 1326, 1337 (9th Cir. 1981).

A defendant can be guilty of conspiracy even if he does not realize benefits directly from the underlying offenses, but instead conspires to benefit others and only indirectly benefits himself. United States v. Carruth, 699 F.2d 1017, 1021 (9th Cir. 1983).

### 3.   PROOF OF THE CONSPIRACY

The government need not show direct contact or an explicit agreement among all of the alleged co-conspirators.  Thomas, 887 F.2d at 1347; Reese, 775 F.2d at 1071.  The government may prove a conspiracy by circumstantial evidence that the defendants acted together in furtherance of a common goal.  Thomas, 887 F.2d at 1347; United States v. Kiriki, 756 F.2d 1449, 1453 (9th Cir. 1985); Murray, 751 F.2d at 1534; United States v. Bibbero, 749 F.2d 581, 587 (9th Cir. 1984).

### 4.   CO-CONSPIRATOR'S STATEMENTS

The Federal Rules of Evidence provide that statements made by a co-conspirator during the course of, and in furtherance of, the conspiracy may be used at trial against another co-conspirator, because such statements are not hearsay.  Fed. R. Evid. 801(d)(2)(E). Admissibility under Rule 801 (d)(2)(E) is based on a foundation that: (1) the statement was made during the life of the conspiracy; (2) the statement was made in furtherance of the conspiracy; and (3) there

11

is, including the co-conspirator's statement itself, sufficient proof of the existence of the conspiracy and the defendant's connection to it. Bourjaily v. United States, 483 U.S. 171, 173, 181 (1987).

Statements of an unindicted co-conspirator made in furtherance of the conspiracy are admissible against a charged conspirator. United States v. Nixon, 418 U.S. 683, 701 (1974); United States v. Williams, 989 F.2d 1061, 1067 (9th Cir. 1993). The defendant need not be present at the time the co-conspirator made the statement. Sendejas v. United States, 428 F.2d 1040, 1045 (9th Cir. 1970). Statements made with the intent to further the conspiracy are admissible, whether or not they actually result in any benefit to the conspiracy. Williams, 989 F.2d at 1068; United States v. Schmit, 881 F.2d 608, 612 (9th Cir. 1989); United States v. Zavala-Serra, 853 F.2d 1512, 1516 (9th Cir. 1988).

Co-conspirator statements also need not be made to a member of the conspiracy in order to be admissible under Federal Rule 801(d)(2)(E). Zavala-Serra, 853 F.2d at 1516. Co-conspirator statements can be made to government informants and undercover agents. Id.; United States v. Tille, 729 F.2d 615, 620 (9th Cir. 1984); United States v. Echeverry, 759 F.2d 1451, 1457 (9th Cir. 1985). The co-conspirator statements also need not have been made exclusively, or even primarily, to further the conspiracy. Garlington v. O'Leary, 879 F.2d 277, 284 (7th Cir. 1989).

Here, GOMEZ's co-conspirator, CARMONA, made several statements during the course of the conspiracy while speaking with the CIs on January 7, 2016 and January 14, 2016. Co-conspirator GONZALEZ also made some statements on January 14, 2016. These statements, where CARMONA discussed methamphetamine and firearm sales, and where

12

1    GONZALEZ discussed the upcoming meeting between the CIs on one hand,
2    and GOMEZ, CARMONA, and GONZALEZ on the other hand, were made in
3    furtherance of the conspiracy and are admissible as against GOMEZ, a
4    co-conspirator.

5    **B.   LEGAL ISSUES ASSOCIATED WITH TITLE 21 OFFENSES**

6         The government submits the following authority as material to
7    arguments which may be raised at trial concerning the charged Title
8    21 offenses.

9         1.   <u>POSSESSION</u>

10        Possession may be actual or constructive, and may be proved by
11   direct or circumstantial evidence.  <u>United States v. Grayson</u>, 597
12   F.2d 1225, 1229 (9th Cir. 1979).  A defendant who engages in a joint
13   effort to possess drugs may be found to have jointly possessed the
14   drugs, because the jury can infer that the defendant had both
15   knowledge of and control over the contraband in the possession of a
16   companion.  <u>United States v. Dupuy</u>, 760 F.2d 1492, 1500 (9th Cir.
17   1985).  Custody, management, or control of a container in which a
18   controlled substance is concealed may constitute circumstantial
19   evidence from which possession and knowledge may be inferred.  <u>United</u>
20   <u>States v. Campbell</u>, 507 F.2d 955, 957-58 (9th Cir. 1974).

21        2.   <u>KNOWLEDGE</u>

22        Mere possession of a substantial quantity of illegal drugs is
23   sufficient evidence to support a finding that a defendant knowingly
24   possessed the illegal drugs.  <u>United States v. Barbosa</u>, 906 F.2d
25   1366, 1368 (9th Cir. 1990); <u>see also</u> <u>United States v. Collins</u>, 764
26   F.2d 647, 652 (9th Cir. 1985) (possession of eight pounds of cocaine
27   found to be substantial enough quantity to support inference that
28   defendant knowingly possessed cocaine); <u>United States v. Mora</u>, 876

F.2d 76, 77-78 (9th Cir. 1989) (387.6 grams of heroin sufficient to raise inference).

Where a defendant is aware of acts indicating a high probability of illegality, but purposely fails to investigate or tries to avoid learning all the facts because he wants to remain ignorant, it may be inferred that he has the knowledge that his conduct was illegal. United States v. McAllister, 747 F.2d 1273, 1275-76 (9th Cir. 1986).

C.   **RECORDINGS**

At trial, the government expects to introduce excerpts of audio and audio/video recordings of interactions between the CIs and the coconspirators including defendant GOMEZ, as well as telephone calls between the CIs and defendant GOMEZ.  All of these recordings have been produced to the defense and excerpts of these recordings have been placed onto compact discs, which plaintiff will offer as exhibits at trial.  With minor intermittent Spanish language exceptions, the conversations captured by the recordings occurred in English.  The government has had transcripts made for these recordings.  Transcript books will be prepared for the Court.

For recorded conversations in the English language, the recording itself is the evidence, and a transcript of the recording may be provided as an aid in following the conversation.  United States v. Chen, 754 F.2d 817, 824 (9th Cir. 1985); United States v. Phillips, 577 F.2d 495, 501-02 (9th Cir. 1978).  All duly admitted recorded conversations must be played in open court.  The foundation that must be laid for the introduction into evidence of recorded conversations is a matter largely within the discretion of the trial court.  There is no rigid set of foundational requirements.  Rather, the Ninth Circuit has held that recordings are sufficiently

14

authenticated under Federal Rule of Evidence 901(a) if sufficient proof has been introduced "so that a reasonable juror could find in favor of authenticity or identification," which can be done by "proving a connection between the evidence and the party against whom the evidence is admitted" and can be done by both direct and circumstantial evidence. United States v. Matta-Ballesteros, 71 F.3d 754, 768 (9th Cir. 1995), *modified by* 98 F.3d 1100 (9th Cir. 1996).

Witnesses may testify competently as to the identification of a voice on a recording. A witness's opinion testimony in this regard may be based upon his having heard the voice on another occasion under circumstances connecting it with the alleged speaker. Fed. R. Evid. 901(b)(5); United States v. Torres, 908 F.2d 1417, 1425 (9th Cir. 1990) ("Testimony of voice recognition constitutes sufficient authentication.").

Recorded conversations are competent evidence even when they are partly inaudible, unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy. United States v. Rrapi, 175 F.3d 742, 746 (9th Cir. 1999). A lay witness may explain unfamiliar terms contained in a recorded conversation involving the intricacies of drug trafficking or money laundering, even when such matters are central to the facts at issue. Fed. R. Evid. 701; United States v. Freeman, 498 F.3d 893, 904-05 (9th Cir. 2007).

The recordings contain out-of-court statements by defendants and the CIs. Rule 801(c) of the Federal Rules of Evidence defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). However,

statements by a party opponent are admissible non-hearsay, as are statements which are not being admitted for the truth of the matter asserted but rather to show the effect on the person who heard the statement.  Fed. R. Evid. 801(c), (d)(2)(A); <u>see also</u> <u>United States v. Valerio</u>, 441 F.3d 837, 844 (9th Cir. 2006) (informant's statements on a recording are admissible to give context to defendant's statements).

Moreover, under the Federal Rules of Evidence, a defendant's statement is admissible only if offered against him; a defendant may not elicit his own prior statements.  Fed. R. Evid. 801(d)(2)(A); <u>United States v. Fernandez</u>, 839 F.2d 639 (9th Cir. 1988).  When the government admits a portion of a defendant's prior statement, the defendant may not put in additional out-of-court statements by him because such statements are hearsay when offered by the defendant. Fed. R. Evid. 801(d)(2); <u>Fernandez</u>, 839 F.2d at 640; <u>United States v. Ortega</u>, 203 F.3d 675, 681-82 (9th Cir. 2000) (defendant prohibited from eliciting his own exculpatory statements during cross examination of government agent).

Further, it is entirely proper to admit segments of a statement of a telephone call without including everything, and adverse parties are not entitled to offer additional statements just because they are there and the proponent has not offered them.  <u>United States v. Collicott</u>, 92 F.3d 973, 983 (9th Cir. 1996).  The "rule of completeness" set forth in Rule 106 of the Federal Rules of Evidence is applicable where one party seeks to introduce a misleadingly tailored snippet of a statement that creates a misleading impression by being taken out of context.  Rule 106 does not render admissible evidence which is otherwise inadmissible under the hearsay rules.

16

1    _Id._  Accordingly, "non-self-inculpatory statements are inadmissible

2    even if they were made contemporaneously with other self-inculpatory

3    statements."  _Ortega_, 203 F.3d at 682 ("[S]elf-inculpatory

4    statements, when offered by the government, are admissions by a

5    party-opponent and are therefore not hearsay, _see_ Fed. R. Evid.

6    801(d)(2), but the non-self-inculpatory statements are inadmissible

7    hearsay.").

8         **D.   PHYSICAL EVIDENCE**

9         The government will seek to introduce physical evidence

10   recovered from the January 14, 2016 and February 17, 2016

11   transactions, as well as the searches conducted on June 16, 2016.

12   Rule 901(a) of the Federal Rules of Evidence provides that "the

13   requirement of authentication or identification as a condition

14   precedent to admissibility is satisfied by evidence sufficient to

15   support a finding that the matter in question is what its proponent

16   claims."  Rule 901(a) only requires the government to make a _prima_

17   _facie_ showing of authenticity or identification "so that a reasonable

18   [trier of fact] could find in favor of authenticity or

19   identification."  _United States v. Chu Kong Yin_, 935 F.2d 990, 996

20   (9th Cir. 1991); _United States v. Blackwood_, 878 F.2d 1200, 1202 (9th

21   Cir. 1989).  Once the government meets this burden, "the credibility

22   or probative force of the evidence offered is, ultimately, an issue

23   for the [factfinder]."  _United States v. Black_, 767 F.2d 1334, 1342

24   (9th Cir. 1985).

25        To be admitted into evidence, a physical exhibit must be in

26   substantially the same condition as when the crime was committed.

27   Fed. R. Evid. 901.  The Court may admit the evidence if there is a

28   "reasonable probability the article has not been changed in important

1    respects."  United States v. Harrington, 923 F.2d 1371, 1374 (9th

2    Cir. 1991).  This determination is to be made by the trial judge and

3    will not be overturned except for clear abuse of discretion.  Factors

4    the Court may consider in making this determination include the

5    nature of the item, the circumstances surrounding its preservation,

6    and the likelihood of intermeddlers having tampered with it.  Gallego

7    v. United States, 276 F.2d 914, 917 (9th Cir. 1960).

8        In establishing chain of custody as to an item of physical

9    evidence, the government is not required to call all persons who may

10   have come into contact with the piece of evidence.  Harrington, 923

11   F.2d at 1374.  Moreover, a presumption of regularity exists in the

12   handling of exhibits by public officials.  Id.  Therefore, to the

13   extent that alleged or actual gaps in the chain of custody exist,

14   such gaps go to the weight of the evidence rather than to its

15   admissibility.  Id.

16   **E.    ADMISSION OF CERTIFIED CONVICTION RECORDS**

17       Absent a stipulation from defendant GOMEZ, the government

18   intends to introduce certified conviction records for defendant's

19   March 12, 2003 conviction for carjacking, in violation of California

20   Penal Code Section 215 or his August 25, 2010 conviction for

21   possession of drugs where prisoners are kept, in violation of

22   California Penal Code Section 4573.6, in its case in chief.  As

23   described in its motion *in limine*, should defendant GOMEZ testify,

24   the government may also seek to introduce records of both of his

25   aforementioned felony convictions for the purpose of impeaching his

26   character for truthfulness.  Similarly, should defendant GONZALEZ

27   testify, the government may also seek to introduce records of his

28   2005 conviction for assault with a firearm in violation of California

                                    18

Penal Code Section 245(a)(2), his 2010 convictions for possession of a controlled substance in violation of California Health and Safety Code Section 11377(a), and transportation of a controlled substance, in violation of California Health and Safety Code Section 11379(a), and his 2016 conviction for felon in possession of a firearm, in violation of California Penal Code Section 29800(a)(1).

These records are properly admissible under Fed. R. Evid. 902(4) (certified copies of public records do not require extrinsic evidence of authenticity as a condition precedent to admission).

### F. EXPERT WITNESSES

The government intends to offer expert testimony regarding the chemical analysis of the methamphetamine from the January 14, 2016 and February 17, 2016 transactions, as well as the methamphetamine found in the room with GOMEZ on June 16, 2016, and as to the manufacture of the firearm from the February 17, 2017 transaction and the firearm and ammunition from the June 16, 2016 seizure. The government also intends to offer expert testimony regarding the *modus operandi* of drug traffickers and the value of the methamphetamine seized on June 16, 2016. Absent a stipulation regarding GOMEZ's criminal history, the government intends to call a fingerprint technician to testify as to her comparison of fingerprints from GOMEZ's booking in this case, to fingerprint cards associated with GOMEZ's prior convictions. These experts' testimony should be allowed because they will assist the trier of fact in understanding the evidence and determining facts at issue. See, e.g., United States v. Valencia-Amezcua, 278 F.3d 901, 908 (9th Cir. 2002) ("Government agents or other persons may 'testify as to the general practices of criminals to establish the defendants' *modus*

1  *operandi*.'") (quoting <u>United States v. Johnson</u>, 735 F.2d 1200, 1202

2  (9th Cir. 1984)); <u>United States v. Dunn</u>, 946 F.2d 615, 618 (9th Cir.

3  1991) ("The Ninth Circuit allows expert testimony regarding the

4  identity of the manufacturer to establish that a gun travelled in

5  interstate commerce before the defendant received it."); <u>United</u>

6  <u>States v. Sherwood</u>, 98 F.3d 402, 408 (9th Cir. 1996) (affirming

7  admission of fingerprint expert's testimony).  The government has

8  already provided notice to defendant concerning these areas of expert

9  testimony under Fed. R. Crim. P. 16(a)(1)(G).

10      If specialized knowledge will assist the trier of fact in

11  understanding the evidence or determining a fact in issue, a

12  qualified expert witness may provide opinion testimony on the issue

13  in question.  Fed. R. Evid. 702.  The Court has broad discretion to

14  determine whether to admit expert testimony.  <u>United States v.</u>

15  <u>Andersson</u>, 813 F.2d 1450, 1458 (9th Cir. 1987).  The Ninth Circuit

16  has held that the admissibility of expert testimony generally turns

17  on the trial court answering the following questions:

18      a)    Whether the opinion is based upon scientific, technical, or

19  other specialized knowledge;

20      b)    Whether the expert's opinion would assist the trier of fact

21  in understanding the evidence or determining a fact in issue;

22      c)    Whether the expert has appropriate qualifications;

23      d)    Whether the testimony is relevant and reliable;

24      e)    Whether the methodology or technique the expert uses "fits"

25  the conclusions; and

26      f)    Whether the probative value is substantially outweighed by

27  the risk of unfair prejudice, confusion of issues, or undue

28  consumption of time.

See <u>United States v. Hankey</u>, 203 F.3d 1160, 1168 (9th Cir. 2000).

Here, the government anticipates that it will call DEA Forensic Chemist Trevor Equitz to testify as to his receipt of and chemical analysis of the drugs recovered from CI 489 after the methamphetamine transactions, and from the room where GOMEZ was found on June 16, 2016.  Mr. Equitz will also testify regarding his expert opinion that one substance contained a net weight of 111.7 grams of 96.8% pure methamphetamine, totaling 108.1 grams of actual methamphetamine, another substance contained a net weight of 222.9 grams of 98.4% pure methamphetamine, totaling 219.3 grams of actual methamphetamine, and the other substance tested contained a net weight of 3.34 grams of 97% pure methamphetamine, totaling 3.23 grams of actual methamphetamine.  Mr. Equitz's curriculum vitae and his specific testing results have been provided to the defense.

Second, the government anticipates that it will call Alcohol, Tobacco and Firearms ("ATF") Special Agent Paul Day to testify as to his receipt and analysis of the firearm recovered by law enforcement from CI 489 after the February 17, 2016 transaction.  Mr. Day will testify regarding his expert opinion that the firearm is a Smith and Wesson, MP 15-22, .22 caliber rifle, with an obliterated serial number, manufactured by Smith and Wesson in the State of Massachusetts.  Mr. Day is also expected to testify as to his receipt and analysis of the firearm and ammunition seized on June 16, 2016.  Mr. Day will testify regarding his expert opinion that the firearm is a Smith & Wesson Pistol, model M&P, .40 caliber, serial number HSA8129, manufactured by Smith and Wesson in the State of Massachusetts; that there are seven rounds of Winchester .40 caliber ammunition that was manufactured by Winchester in the State of

1    Illinois; that there are two rounds of Remington 9 mm ammunition that

2    was manufactured by Remington in the State of Connecticut or

3    Arkansas; and that there are a total of 41 rounds of Federal .40

4    caliber ammunition that was manufactured by CCI - Speer in the State

5    of Idaho, on behalf of Federal Cartridge Company, located in the

6    State of Minnesota.  Mr. Day's background, including information on

7    experience and training regarding firearms and ammunition, and

8    testing results have been provided to the defense.

9         Third, the government anticipates that it will call Riverside

10   County Sheriff's Department Fingerprint Technician Heather Driever to

11   testify as to her comparison between GOMEZ's booking fingerprints in

12   this case with fingerprints associated with GOMEZ's prior

13   convictions.

14        Fourth, the government anticipates that it will call Riverside

15   County District Attorney's Office Senior Investigator Chuck

16   Cervello.[2]  The government anticipates eliciting testimony from

17   Senior Investigator Cervello regarding (1) the use of coded language

18   in communication between drug distributors and others, including

19   buyers, about drug transactions, the quantities, prices, and purity

20   _____

21        [2] The government initially noticed Investigator Ryan Monis as an
     expert witness in many of the same topic areas as Senior Investigator
22   Chuck Cervello.  Defendant GOMEZ moved to preclude expert testimony
     from Investigator Monis in this area.  (See CR 172, 175, 183, 185,
23   211, 212.)  This Court denied defendant's motions.  (CR 237.)  After
     the trial was continued, the government then noticed Senior
24   Investigator Cervello as an expert witness to testify in lieu of the
     expert testimony that would have been elicited from Investigator
25   Monis, thereby avoiding the need for a "dual role" instruction with
     regards to Investigator Monis, who is also a percipient witness in
26   the case.  The government also noticed Senior Investigator Cervello
     as an expert with regards to *modus operandi* of gang members and
27   indicia of gang membership.  Defendant GOMEZ then moved to preclude
     Investigator Cervello from testifying as an expert witness, and the
28   government opposed the motion.  This motion is pending.  (See CR 261,
     279.)

                                    22

levels, (2) the approximate market price of the methamphetamine
seized on June 16, 2016, (3) the use of third parties by drug
traffickers to conceal drug distribution from law enforcement, and
(4) the use of a firearm by drug traffickers for protection during
drug trafficking activity.  With regards to the meaning of certain
slang and/or code words used in the audio and video recordings
introduced at trial, the government submits that the prospective
testimony is not expert in nature, nonetheless, the defense has been
provided with the specific slang and/or code words that the
government may ask Investigator Monis to define.  The government may
also elicit testimony from Senior Investigator Cervello regarding
Hispanic "Sureno" street gangs in and around the Coachella Valley
(including Indio), their ties to the Mexican Mafia, and indicia of
gang (and drug trafficking) activity associated with specific items
of evidence collected by law enforcement in this case.

G.    **NON-EXPERT OPINION TESTIMONY OF AGENTS AND LAY WITNESSES**

Federal Rule of Evidence 701 "permits a lay witness to give
opinion testimony as long as the opinion is (a) rationally based on
the perception of the witness and (b) helpful to a clear
understanding of the witness's testimony or the determination of a
fact in issue."  United States v. Pino-Noriega, 189 F.3d 1089, 1097
(9th Cir. 1999) (quotation marks omitted).  Under Ninth Circuit law,
opinion testimony by law enforcement officers is admissible and not
necessarily expert testimony within the meaning of Rule 16(a)(1)(G).
See United States v. VonWillie, 59 F.3d 922, 929 (9th Cir. 1995).  As
the court in United States v. Skeet, 665 F.2d 983, 985 (9th Cir.
1982), stated:

> Opinions of non-experts may be admitted where the facts could not otherwise be adequately presented or described to the jury in such a way as to enable the jury to form an opinion or reach an intelligent conclusion. If it is impossible or difficult to reproduce the data observed by the witnesses, or the facts are difficult of explanation, or complex, or are of a combination of circumstances and appearances which cannot be adequately described and presented with the force and clearness as they appeared to the witness, the witness may state his impressions and opinions based upon what he observed.

Ultimately, opinion testimony by non-experts is "a means of conveying to the jury what the witness has seen or heard." Id.

In addition, a participant in a narcotics-related conversation can properly testify regarding his understanding of statements made to him by the defendant. United States v. Brooks, 473 F.2d 817, 818 (9th Cir. 1973). A participant in a narcotics-related conversation can also testify about the meaning of coded language used in the conversation. United States v. Estrada, 39 F.3d 772, 773 (7th Cir. 1994). A lay witness can testify concerning the meaning of coded language, if the witness has personal knowledge of the subject being discussed and the persons involved. United States v. Saulter, 60 F.3d 270, 276 (7th Cir. 1995); see also United States v. Gadson, 763 F.3d 1189, 1209 (9th Cir. 2014) ("[A]n investigator who has accumulated months or even years of experience with the events, places, and individuals involved in an investigation necessarily draws on that knowledge when testifying; indeed, it is those out-of-court experiences that make the witness's testimony helpful to the jury.").

CI-489, Investigator Monis, and SA Woolley all may testify as to the coded language used by the CIs and some of the coconspirators, including defendant GOMEZ. This coded language is captured on

24

1    recordings from January 7, 2016, January 14, 2016, February 17, 2016,

2    February 18, 2016, and February 24, 2016.

3         **H.   ENTRAPMENT**

4              1.   PROCEDURAL MATTERS

5         A court analyzing a defendant's entrapment defense must decide

6    two questions, one before trial and the other at the close of

7    evidence:

8         First, the Court must decide whether to allow presentation of

9    that defense at trial at all -- a determination based on the

10   sufficiency of a defendant's pre-trial offer of proof.  United States

11   v. Gurolla, 333 F.3d 944, 952 n.8 (9th Cir. 2003); see also United

12   States v. Peltier, 693 F.2d 96, 97-98 (9th Cir. 1982) (per curiam)

13   (same, regarding duress).  Here, the Court has not yet ruled on

14   whether defendants shall be allowed to present an entrapment defense

15   at trial.  Importantly, when a defendant is allowed to present an

16   entrapment defense at trial, it is then the government's burden to

17   prove beyond a reasonable doubt that (1) defendant was predisposed to

18   commit the crime before being contacted by government agents or (2)

19   the defendant was not induced by government agents to commit the

20   crime.  See Ninth Cir. Model Criminal Jury Instr. No. 6.2 (2010 ed.);

21   United States v. Cortes, 757 F.3d 850, 856 (9th Cir. 2014).  As a

22   result, if the Court does not preclude an entrapment defense pre-

23   trial, then government must be permitted to present evidence

24   regarding the elements of entrapment -- including all factors

25   relevant to defendant's predisposition (including prior convictions)

26   and the nature of government inducement -- in its case in chief.

27   These are not issues that can be reserved for rebuttal or for cross-

28   examination of the defendants should they testify.

Second, if the Court permits presentation of evidence regarding entrapment at trial, the Court must determine before instructing the jury whether there is in fact evidence supporting both of the elements of the defense.  If there is not, the Court should refuse to instruct the jury regarding entrapment.  United States v. Hoyt, 879 F.2d 505, 509 (9th Cir. 1989).  While a defendant needs to present only "slight" evidence to create a genuine factual dispute sufficient to submit entrapment to the jury, id. at 509, that evidence must (1) support both elements of entrapment (both lack of predisposition and inducement by government agents) and (2) "can[not] be squeezed out of vague and tenuous possibilities and inferences." United States v. Kessee, 992 F.2d 1001, 1004 (9th Cir. 1993); see also United States v. Brandon, 633 F.2d 773, 779 (9th Cir. 1980).  A defendant is not entitled to an entrapment instruction where there is no genuine dispute as to whether the defendant was entrapped.  United States v. Rhodes, 713 F.2d 463, 467 (9th Cir. 1983).

2.   ELEMENTS OF ENTRAPMENT

Relevant to both of these considerations are the elements of entrapment: (1) predisposition and (2) inducement.  To present an entrapment defense at trial and to support an instruction to the jury, the defendant shoulders the initial burden to present evidence of both these elements.  Hoyt, 879 F.2d at 509; United States v. Busby, 780 F.2d 804, 806 (9th Cir. 1986); United States v. Shapiro, 669 F.2d 593, 598 (9th Cir. 1982).  If the defendant makes a *prima facie* showing of entrapment, the government bears the burden to demonstrate predisposition or lack of inducement beyond a reasonable doubt.  Cortes, 757 F.3d at 856.

26

a. *PREDISPOSITION*

Ultimately, while the government may use artifice and stratagem to catch criminals, it may not "implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." Sorrells v. United States, 287 U.S. 435, 441, 442 (1932). Thus, a defendant's lack of predisposition, not the nature of the government's conduct, is the crux of the entrapment defense. United States v. Reynoso-Ulloa, 548 F.2d 1329, 1334 (9th Cir. 1977); see also Hampton v. United States, 425 U.S. 484, 488-89 (1976). If a defendant is ready, willing, and able to commit a crime, and government agents merely provide the defendant with an opportunity to do so, there is no entrapment. United States v. Sandoval-Mendoza, 472 F.3d 645, 649 (9th Cir. 2006).

Courts (and, ultimately, juries) assess five factors when determining predisposition:

1) the character and reputation of the defendant, including any prior criminal record;

2) whether the suggestion of criminal activity was initially made by the government;

3) whether the defendant engaged in the criminal activity for profit;

4) whether the defendant evidenced reluctance to commit the offense, overcome only by repeated government inducement or persuasion; and

5) the nature of the inducement by the government. United States v. Marbella, 73 F.3d 1508, 1512 (9th Cir. 1996); United States v. Smith, 924 F.2d 889, 898 (9th Cir. 1991); Busby, 780 F.2d at 806; Gurolla, 333 F.3d at 955. None of these factors, alone,

controls.  However, the most important factor is "whether the
defendant evidenced reluctance to engage in criminal activity which
was overcome by repeated government inducement." Marbella, 73 F.3d
at 1512; Reynoso-Ulloa, 548 F.2d at 1336.  As a result, in Busby, the
Ninth Circuit upheld a court's refusal to instruct the jury regarding
entrapment where evidence showed, *inter alia*, that the parties had
not talked for three days but the defendant called the informant to
continue negotiations on a drug sale.  780 F.2d at 808.  The Court
noted that this act was strong evidence of criminal predisposition.
Id.

Here, the government expects to present overwhelming evidence of
predisposition.

First, the government expects to present audio and audio/visual
recordings of the January 7, 2016 meeting, the January 14, 2016
meeting, the February 17, 2016 meeting, and telephone calls between
GOMEZ[3] and CI 489 before and after the February 17, 2016 meeting.
The government submits that GOMEZ's speech and demeanor during these
transactions is that of someone who is comfortably in control of his
surroundings and nonchalantly engages in the sales transactions
involving firearms and methamphetamine.

Second, the government expects to show that GOMEZ engaged in two
illegal sales events (that is firearm and methamphetamine sales) over
a period of approximately one month, and a week after the second
sales event defendant expressed his willingness to engage in
additional sales in a recorded telephone call.  GOMEZ's repeated

---

[3] Based on the allegations in the defense filings, if an
entrapment defense is asserted it would appear to be based on
interactions between GOMEZ and CI 005.

conduct over a prolonged period of time cuts against any testimony GOMEZ or co-defendant CARMONA may provide that GOMEZ did not want to sell firearms, or methamphetamine to CI 489, and that GOMEZ only did so because he was persuaded to do so by CI 005.

Third, the government expects to present evidence collected from the search of the room in which defendant was arrested on June 16, 2016, including (1) a loaded Smith & Wesson, model M&P .40 caliber pistol found in a bag at the foot of the bed; (2) a box with 38 rounds of .40 caliber ammunition found in a bag with three "kites" (i.e., small pieces of paper with small writing on them) in a different bag next to the bed; (3) 3.23 grams of methamphetamine found in a third bag next to the bed; (4) two rounds of ammunition on top of the dresser; (5) two .40 caliber magazines on the top shelf of the closet. The government also expects to present evidence collected from GOMEZ's bedroom at his official residence, also collected on June 16, 2016, including: (1) a page of a Riverside County Sheriff's Department report listing CARMONA and Raymond Quevedo as Mexican Mafia associates and as target subjects in a criminal investigation; (2) GOMEZ's identification card; and (3) handwritten notes on parole law, photographs, and a notepad with names, phone numbers, and additional numbers.

Fourth, the government expects to present in its case-in-chief certified criminal conviction records (absent reaching agreement on a stipulation with defendant) relating to defendant's March 12, 2003 conviction for carjacking (involving a firearm), in violation of California Penal Code Section 215. The government may also present evidence in rebuttal related to GOMEZ's arrest on or about March 22,

2016, for felon in possession of a firearm and felon in possession of ammunition.[4]

Fifth, on cross-examination or in rebuttal, the government may present evidence of GOMEZ's gang membership and his affiliation with the Mexican Mafia, as well as the gang membership of his codefendants, and co-defendant CARMONA's Mexican Mafia affiliation.

### b.   GOVERNMENT INDUCEMENT

"[M]ere suggestions or the offering of an opportunity to commit a crime is not conduct amounting to inducement." Manarite, 44 F.3d at 1418; Reynoso-Ulloa, 548 F.2d at 1336 n.10 (no inducement where government agents merely solicited defendant to commit a crime); Sorrels, 287 U.S. at 441 ("[i]t is well settled that the fact that officers or employees of the government merely afford opportunities or facilities for the commission for the offense" does not establish entrapment).   Inducement, instead, is limited to "repeated and persistent solicitation or persuasion which overcomes the defendant's reluctance." United States v. Simas, 937 F.2d 459, 462 (9th Cir. 1991) (punctuation omitted).   As noted by the Ninth Circuit in Reynoso-Ulloa, "[t]he defense of entrapment, while protecting the innocent from the Government creation of a crime, is unavailable to a defendant who, motivated by greed and unconcerned about breaking the law, readily accepts a propitious opportunity to commit an offense." 548 F.2d at 1338.   For this reason, "[w]hen the motivation presented

---

[4] The circumstances involved in GOMEZ's March 22, 2016 arrest for felon in possession of a firearm and felon in possession of ammunition may be considered "other act" evidence under Federal Rule of Evidence 404(b).   The government is only considering introducing evidence supporting these facts if GOMEZ pursues an entrapment defense, and thereby places his predisposition to commit the charged offenses at issue.

by the government is the typical benefit from engaging in the proposed criminal act, there is no reason to be concerned that an innocent person is being entrapped." <u>United States v. Spentz</u>, 653 F.3d 815, 819 (9th Cir. 2011).

While the exact nature of the alleged government inducement in this case has yet to be revealed,[5] it cannot be compelling in light of the expected evidence discussed above; GOMEZ engaged in multiple transactions over a prolonged period of time and the recordings show that GOMEZ did not appear reluctant to engage in the transactions involving contraband.  The only benefit offered to defendant for engaging in the sales of contraband was to make money; the "typical benefit" to be gained from engaging in illegal activity.

I.   **SENTENCING ENTRAPMENT**

"Sentencing entrapment occurs when a defendant is predisposed to commit a lesser crime, but is entrapped by the government into committing a crime subject to more severe punishment." <u>United States v. Mejia</u>, 559 F.3d 1113, 1118 (9th Cir. 2009).  "The burden is on the defendant to show, by a preponderance of the evidence: 1) the lack of intent to produce the quantity of drugs; and 2) the lack of capability to produce the quantity of drugs." <u>Id</u>.  The mere fact that the government "presented the opportunity" to a defendant to commit a crime is insufficient to demonstrate sentencing entrapment. <u>United States v. Black</u>, 733 F.3d 294, 310 (9th Cir. 2013).  However,

---

[5] Co-defendant CARMONA's declaration filed along with the reply in support of defendants' motion to dismiss alleges certain conduct by CI 005, which may form the basis for GOMEZ to assert an entrapment defense.  However, as of this filing GOMEZ has not affirmatively stated that he will do so, nor has he described the alleged inducement in detail, to the extent that it is anything more than what is alleged in the aforementioned declaration.

1  "if there is some foundation in the evidence that he would be subject

2  to a lesser statutory minimum or maximum sentence if his sentencing

3  entrapment defense were to succeed, then [defendant] is entitled to a

4  jury instruction on that defense." Cortes, 757 F.3d at 863 (2013).

5  Here, the government expects the evidence to show that GOMEZ

6  willingly supplied CI 489 with approximately 108.1 grams of

7  methamphetamine on January 14, 2016, and 219.3 grams of

8  methamphetamine on February 17, 2016, demonstrating that he had both

9  the intent and capability to produce the quantity and type of drug

10  requested by CI 489.  Moreover, in a telephone call prior to the

11  February 17, 2016 transaction, GOMEZ offered to sell CI 489 a pound

12  of methamphetamine, rather than the half-pound they had previously

13  discussed.  When CI 489 told GOMEZ he did not have enough money to

14  buy a whole pound of methamphetamine, GOMEZ told CI 489 he had

15  another buyer for the half-pound of methamphetamine, and was only

16  asking CI 489 since GOMEZ had the extra half-pound of methamphetamine

17  on hand and he was going to see CI 489 anyway.  The fact that

18  defendant actually supplied CI-489 with agreed-upon quantities of

19  methamphetamine on two occasions, and made an unsolicited offer to

20  sell CI 489 more methamphetamine than he had requested undercuts any

21  claim of sentencing entrapment because it shows that defendant had

22  the capability to provide the quantity of drugs requested by CI 489.

23  In discussing sentencing entrapment, the Ninth Circuit has

24  suggested that sentencing entrapment is more likely to occur in

25  reverse sting operations, such as the case where the government sets

26  up a fictitious stash house robbery, than in cases like this one,

27  where the government seeks to purchase drugs from a defendant.

28  "Fictitious stash house robberies allow the government the virtually

1  unfettered ability to inflate the amount of drugs supposedly in the

2  house and thereby obtain a greater sentence for the defendant."

3  United States v. Yuman-Hernandez, 712 F.3d 471, 474 (9th Cir. 2013)

4  (internal citations, alterations, and quotation marks omitted); see

5  also Cortes, 757 F.3d at 861-64 (same).  By contrast, "[t]he

6  capability to sell a certain quantity of drugs has concrete contours:

7  the defendant either can or cannot procure or produce the amount in

8  question."  Yuman-Hernandez, 712 F.3d at 474.  Here, the government

9  expects that the evidence presented at trial will neither demonstrate

10  entrapment nor sentencing entrapment.

11  **J.    ENTRAPMENT AND FEDERAL RULE OF EVIDENCE 405**

12      A defendant who raises an entrapment defense puts his character

13  at issue.  Federal Rule of Evidence 405(b) permits evidence of

14  relevant specific instances of conduct where the trait of character

15  is an "essential element of a charge, claim or defense," including

16  when entrapment is a defense. United States v. Mendoza-Prado, 314

17  F.3d 1099, 1103-1104 (9th Cir. 2002); see also United States v.

18  Thomas, 134 F.3d 975, 980 (9th Cir. 1998).  Once entrapment is

19  raised, predisposition to commit the offense becomes an "essential

20  element" of the case, and specific instances of misconduct become

21  admissible to prove predisposition under Rule 405(b).

22  **K.    CROSS EXAMINATION OF DEFENDANTS**

23      If a defendant testifies at trial, he waives his right against

24  self-incrimination and subjects himself to cross-examination

25  concerning all matters reasonably related to the subject matter of

26  his testimony.  See, e.g., Fitzpatrick v. United States, 178 U.S. 304

27  (1971) ("The defendant cannot assert a self-incrimination privilege

28  'on matters reasonably related to the subject matter of his cross-

1 examination.'"").  The scope of a defendant's waiver is co-extensive

2 with the scope of relevant cross-examination.  United States v.

3 Cuozzo, 962 F.2d 945, 948 (9th Cir. 1992); Black, 767 F.2d at 1341

4 (9th Cir. 1985) ("What the defendant actually discusses on direct

5 does not determine the extent of permissible cross-examination or his

6 waiver.  Rather, the inquiry is whether 'the government's questions

7 are reasonably related' to the subjects covered by the defendant's

8 testimony.").

9     **L.   USE OF PRIOR CONVICTIONS TO IMPEACH DEFENDANT GOMEZ SHOULD**

       **HE TESTIFY**

10

11     As referenced in the government's motion to admit certain of

12 defendants' previous convictions for the purpose of impeachment,

13 should they testify, the government may use certain of defendants'

14 felony convictions to impeach them, pursuant to Fed. R. Evid. 609.

15 (See CR 158, 179, 184.)  Under Fed. R. Evid. 609(a), a defendant's

16 prior conviction "must be admitted" for the purpose of impeachment,

17 if it was sustained or the defendant was released from confinement

18 within the past ten years, and its probative value is not outweighed

19 by its prejudicial effect.  The relevant factors for balancing

20 probative value against prejudicial effect are: (1) the impeachment

21 value of the prior crime; (2) the point in time of the conviction and

22 the witness's subsequent history; (3) the similarity between the past

23 crime and the charged crime; (4) the importance of the defendant's

24 testimony; and (5) the centrality of the credibility issue.  United

25 States v. Hursh, 217 F.3d 761, 768 (9th Cir. 2000) (citing United

26 States v. Browne, 829 F.2d 760, 762-63 (9th Cir. 1987)).

27     The government may seek to introduce evidence of defendant

28 GOMEZ's: (1) March 12, 2003 conviction for carjacking, in violation

34

of California Penal Code Section 215, in the Superior Court of the State of California, County of Riverside, case number INF040060, for which he was sentenced to ten years in custody; and (2) August 25, 2010 conviction for possession of drugs where prisoners are kept, in violation of California Penal Code Section 4573.6, in the Superior Court of the State of California, County of Monterey, case number SS100580A, for which he was sentenced to four years in custody.

## M.   REBUTTAL TO DEFENDANTS' CHARACTER EVIDENCE

Under Fed. R. Evid. 404(a)(2)(A), character evidence is admissible when offered by the prosecution to rebut "evidence of a pertinent trait" of character offered by a defendant.  "[W]hen the defendant 'opens the door' to testimony about an issue by raising it for the first time himself, he cannot complain about subsequent government inquiry into that issue." Mendoza-Prado, 314 F.3d at 1105 (quoting United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992)).  While the government does not yet know what defendant will say should he testify, it anticipates that defendant may put his general character in issue, thus opening the door to negative character evidence on rebuttal.

## N.   RECIPROCAL DISCOVERY

To date, defendants have not produced any reciprocal discovery to the government apart from the May 16, 2018 declaration of co-defendant Angel Carmona ("CARMONA").  Accordingly, to the extent that defendants attempt to introduce or use any documents (including photographs) or affirmative defense at trial that they have not produced, and to which the government is entitled under Federal Rules of Criminal Procedure 12.1, 12.2, 16(b), or 26.2, the government reserves the right to object and to request that the Court exclude

35

the documents or the affirmative defense.  <u>See</u> <u>United States v.</u> <u>Young</u>, 248 F.3d 260, 269-70 (4th Cir. 2001) (upholding exclusion under Rule 16 of audiotape evidence defendant did not produce in pretrial discovery where defendant sought to introduce audiotape on cross-examination of government witness not for impeachment purposes, but as substantive "evidence in chief" that someone else committed the crime).