1           UNITED STATES DISTRICT COURT

2       CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3        HONORABLE OTIS D. WRIGHT II, U.S. DISTRICT JUDGE

4

5    UNITED STATES OF AMERICA,

6               Plaintiff,

7        vs.                        Case No. CR 16-401-ODW

8    JULIO CESAR GOMEZ,

9               Defendant.
     _____/

10

11

12        REPORTER'S TRANSCRIPT OF TRIAL PROCEEDINGS
               TRIAL DAY 1 - PM SESSION
13             TUESDAY, APRIL 2, 2019
                    1:45 P.M.
14             LOS ANGELES, CALIFORNIA

15

16

17

18

19

20

21

22    _____

23        TERRI A. HOURIGAN, CSR NO. 3838, CCRR
              FEDERAL OFFICIAL COURT REPORTER
24          350 WEST FIRST STREET, ROOM 4311
            LOS ANGELES, CALIFORNIA  90012
25                 (213) 894-2849

1          **APPEARANCES OF COUNSEL:**

2

3     **FOR THE PLAINTIFF:**

4          NICOLA T. HANNA
           United States Attorney
5          BY:  SEAN D. PETERSON
               SONAH LEE
6              Assistant United States Attorneys
           United States Courthouse
7          312 North Spring Street
           Los Angeles, California  90012
8

9     **FOR THE DEFENDANT:**

10
           DAVID J.P. KALOYANIDES APLC
11         BY:  DAVID J. KALOYANIDES
           Attorney at Law
12         14726 Ramona Avenue, Suite 108
           Chino, California 91710-5750
13         djpkaplc@me.com

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**



1          INDEX OF WITNESSES:

2                  * * *

   WITNESS:                                      PAGE

3

4

                        NONE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        EXHIBIT INDEX

 2                           *  *  *
          EXHIBIT NO.                          PAGE
 3
 4                           NONE

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

```
 1              LOS ANGELES, CALIFORNIA; TUESDAY, APRIL 2, 2019

 2                            1:45 P.M.

 3                            --oOo--

 4

 5              THE COURT:  Be seated, please.

 6         All right.  Back on the record.  All counsel are present.

 7    The prospective jurors are present as is the defendant.

 8         All right.  When we left off, we had just finished with --

 9              THE COURTROOM DEPUTY:  We're missing No. 4.

10              THE COURT:  All right.  Let's now pick up with Juror

11    No. 4719.

12         Can you answer the questions, please?

13              PROSPECTIVE JUROR:  4719.  I live in Downey and

14    occasionally I am in Lakewood with my boyfriend.

15         I'm a registered dental hygienist here in the State of

16    California.

17         Not married but my boyfriend is a PE teacher and head

18    coach at a high school for wrestling.

19         No children.

20         Never served on a jury before.

21         I do have some close friends and family in law

22    enforcement.

23         My boyfriend has unfortunately lost a dear friend in the

24    south and when the person was being charged for some reason

25    whoever -- when they were going through the information they
```

1   determined that this friend had committed suicide when

2   information said otherwise.

3       But, no family, friends, or myself have been under

4   criminal investigation.

5           THE COURT:  Okay.  I'm trying to figure out whether

6   or not you were close enough to the situation in the south

7   where your views of the system may have become tainted.

8           PROSPECTIVE JUROR:  I was not there, personally.  We

9   started dating considerably distant into the fact, but it

10  just -- it has kind of tainted him a little bit in the jury

11  system, but not myself personally.

12          THE COURT:  I don't care about him right now.

13          PROSPECTIVE JUROR:  Okay.

14          THE COURT:  I'm worried about you being a juror.

15  Are you okay?

16          PROSPECTIVE JUROR:  I'm okay.

17          THE COURT:  You have to remember that was the south.

18          PROSPECTIVE JUROR:  I know.

19          THE COURT:  Not like America.  Pass the microphone.

20          PROSPECTIVE JUROR:  Last four digits 7245.  I live

21  in La Mirada, current occupation is a tax auditor.

22          THE COURT:  For the IRS?

23          PROSPECTIVE JUROR:  Franchise Tax Board.

24          THE COURT:  Same thing.

25          PROSPECTIVE JUROR:  Married.  My wife is a dentist.

```
 1    I have a five year old.

 2         I have served in a civil jury before.

 3         No, no, no on 7, 8 and 9.

 4              THE COURT:  I have always wanted to have one of you

 5    in the palm of my hand.  Pass the microphone, please.

 6              PROSPECTIVE JUROR:  My number is 5882.

 7         I live in Los Angeles.  I'm a stay-at-home mother.

 8         I am a widow, and I have a six-year-old daughter.

 9         And I have never served on a jury before.

10         And no to 7, 8 and 9.

11              THE COURT:  Thank you.

12              PROSPECTIVE JUROR:  My last four digits are 1660.

13         I live in Arcadia, I am a billing assistant at a small

14    clinic.

15         I'm not married or in a relationship nor do I have

16    children.

17         I have never served on a jury before, and no to 7, 8 and

18    9.

19              THE COURT:  Thank you.

20              PROSPECTIVE JUROR:  I'm 9364.

21         I live in Toluca Hills, Burbank area.

22         I am a licensed attorney in California since 2004.

23         I have also been -- I'm an active member of Screen Actors

24    Guild for 30 years, so both are my professions.

25         I'm not currently married.
```

1          I'm single, but I'm looking to remarry at sometime in the

2     future.  I'm not against it.

3          I have no children.

4          I have never served on a jury.

5          No close friends or family in law enforcement.

6          And no to 8 and 9.

7               THE COURT:  What kind of law do you practice?

8               PROSPECTIVE JUROR:  Mostly -- well, I closed my

9     private practice.  I was a sole practitioner from 2004 until

10    2000 -- I want to say '09.  I was in entertainment

11    transactional mostly, but I did do some civil litigation.

12               THE COURT:  No criminal?

13               PROSPECTIVE JUROR:  I have never done criminal.

14               THE COURT:  You wouldn't have a problem about

15    following my instructions on the law whether you agree with it

16    or not?

17               PROSPECTIVE JUROR:  Certainly, I hope not.  I will

18    do my best.

19               THE COURT:  Whoa, wait.  Hope not?

20               PROSPECTIVE JUROR:  Well, you know, I have never

21    practiced criminal law, so, you know, I don't know anything

22    about it, really so.  But certainly I don't have any trouble

23    following the law.

24               THE COURT:  You never had any trouble following a

25    judge's orders before, did you?

9

```
 1              PROSPECTIVE JUROR:  Absolutely not, no.
 2              THE COURT:  We're not going to start now, are we?
 3              PROSPECTIVE JUROR:  Of course not.
 4              THE COURT:  All right.  Thank you.
 5              PROSPECTIVE JUROR:  5659.  I'm from Moorpark,
 6  Ventura County.  I am retired from IT industry.  I am married.
 7       And my husband is also retired.
 8       I have two grown children.
 9       Never served on a jury before.
10       No family or friends in law enforcement, if attorney
11  doesn't count.
12              THE COURT:  What doesn't count?
13              PROSPECTIVE JUROR:  Attorney.
14              THE COURT:  Attorney?
15              PROSPECTIVE JUROR:  Yeah.
16              THE COURT:  No, attorneys don't count.
17              PROSPECTIVE JUROR:  No family member have had
18  negative encounters with criminal justice.
19       And nobody was subjected to criminal investigation --
20              THE COURT:  All right.
21              PROSPECTIVE JUROR:  -- from my family.
22              THE COURT:  Thank you.
23              PROSPECTIVE JUROR:  1059.  City of Diamond Bar.
24       Software developer.
25       I'm married, three children.
```

```
1        I served I think on a criminal jury before.

2        We reached a guilty verdict.

3        No to the rest.

4            THE COURT:  Pardon me?

5        Would you repeat your number?

6            PROSPECTIVE JUROR:  1059.

7            THE COURT:  Try it again.

8            PROSPECTIVE JUROR:  1095.

9            THE COURT:  Thank you.

10           PROSPECTIVE JUROR:  4647.  Am I right?

11           THE COURT:  Yes.

12           PROSPECTIVE JUROR:  That is sort of a question mark

13   on that.

14       Good afternoon, Your Honor.  I'm from the City of Long

15   Beach.

16       My current occupation is I'm a civil servant with the City

17   of Los Angeles.

18           THE COURT:  That's not an occupation.

19           PROSPECTIVE JUROR:  I am married and my spouse's

20   occupation is also a civil servant with the City of Los

21   Angeles.

22       I have two grown children.  One in college and the another

23   is graduated.

24       I never actually served on a jury before.  I was selected

25   but the defendant pled -- made a plea.  It was a criminal case.
```

```
 1        I have no family members or close friends in law
 2   enforcement.
 3        However, I do have work associates that are.
 4        None of my --
 5             THE COURT:  I just wished you weren't embarrassed
 6   about what you do for a living.
 7        You and your wife both work for the City of Los Angeles
 8   doing something you are ashamed of.  What could that be?  I
 9   know, parking enforcement.
10             PROSPECTIVE JUROR:  No, sir.
11             THE COURT:  Okay.
12             PROSPECTIVE JUROR:  I'm not ashamed of it.
13             THE COURT:  Yes, you are.  What is it?
14             PROSPECTIVE JUROR:  My laryngitis is back again.
15             THE COURT:  I will come back to you then.
16             PROSPECTIVE JUROR:  I work for the Los Angeles
17   Department of Water and Power.  Everyone hates us.
18             THE COURT:  Why?
19             PROSPECTIVE JUROR:  Everyone hates us.  I would like
20   to retract seven.  I just realized that my stepson works for
21   the Colorado Department of Corrections.
22             THE COURT:  Okay.  Thank you.
23             PROSPECTIVE JUROR:  It is a new job.
24        My family nor I have had any negative encounters with the
25   criminal system or with law enforcement, to my knowledge.
```

```
 1              THE COURT:  All right.  Thank you, Mr. 47.

 2              PROSPECTIVE JUROR:  Thank you, sir.

 3         Hi, I'm 7393.  I live in Walnut.  My current occupation is

 4    I'm a registered nurse.

 5         I have a boyfriend.  He just graduated two weeks ago so

 6    he's not working right now.

 7         No children.

 8         I served on a jury before.  It was a criminal case and we

 9    reached a verdict.

10         My cousin-in-law is a police officer, and no to 8 and 9.

11    Thank you.

12              THE COURT:  Cousin-in-law?

13              PROSPECTIVE JUROR:  Yeah, my cousin's husband.

14              THE COURT:  Okeydoke.  Thank you.

15              PROSPECTIVE JUROR:  I am 0150.  I live in Artesia.

16    I am currently a software engineer.

17         I am not married or in a committed relationship.  I have

18    no children.

19         I have not served on a jury before.

20         I do not believe I have any family members or close

21    friends in law enforcement.

22         I don't believe any family members have had any negative

23    encounters with the criminal justice system nor do I believe

24    they have been the subject of a criminal investigation.

25              THE COURT:  You sound particularly close with their
```

1  family, okay.

2           PROSPECTIVE JUROR:  I have a very big family.

3           THE COURT:  That will do it, too.

4      All right.

5           PROSPECTIVE JUROR:  7237.  I live in Westchester.

6  I'm in advertising sales.  I'm married.

7      My husband is also in advertising.  I have two elementary

8  aged children.  I have served on a jury before.  It was civil

9  and we did reach a verdict.  And no to 7, 8 and 9.

10          THE COURT:  Thank you.

11          PROSPECTIVE JUROR:  My Number is 8089.  I live in

12  Acton.

13      My occupation is I'm a rancher.

14      I'm married.  My wife works for the post office.  We -- I

15  have two grown stepchildren and one lives in Simi Valley and

16  the other one is here.

17      Have never served on a jury before.  I have close friends

18  in law enforcement.  I haven't had any negative encounters with

19  the criminal justice system, and my family has not been subject

20  to criminal investigation.

21          THE COURT:  All right.  With respect to your close

22  friends in law enforcement, can we count on you not to speak

23  with them about this case during the course of the trial?

24          PROSPECTIVE JUROR:  Yes, you can count on it.

25          THE COURT:  Thank you, sir.

1          PROSPECTIVE JUROR:  My number is 9448.  I live in

2    Whittier.  I'm an administrative assistant.

3          I live with my boyfriend.  I have two children that are

4    elementary school age.

5          I have never served on a jury.

6          I do have two relatives in law enforcement.

7          And No. 8 no, and No. 9, three family members.

8          THE COURT:  And how were they treated?

9          PROSPECTIVE JUROR:  I don't know the specifics of

10   two, but one, I mean, it was what it was.

11         THE COURT:  My only concern is do you feel they were

12   treated fairly by the system?

13         PROSPECTIVE JUROR:  The other two I have no

14   knowledge of.  The one, yes.

15         THE COURT:  Thank you.

16         PROSPECTIVE JUROR:  My number is 1416.

17         I live in Glendale, California.

18         I'm a high school math teacher and I'm unmarried.

19         I am in a committed relationship with somebody who is a

20   social worker.

21         I don't have any kids.

22         I haven't served on a jury before.  No to 7, 8, and 9.

23         THE COURT:  Thank you.

24         PROSPECTIVE JUROR:  My last four digits are 5715.  I

25   live in Thousand Oaks.  I'm currently the senior clinical sales

```
 1    consultant for my region.

 2         I'm in a committed relationship.

 3         I have no children.

 4         Never served on a jury.

 5         My sister is an MP in the military.

 6              THE COURT:  What branch?

 7              PROSPECTIVE JUROR:  Army.

 8         Criminal negative encounters, just my father, and subject

 9    of a criminal investigation.

10              THE COURT:  How has that left you feeling about the

11    entire system?

12              PROSPECTIVE JUROR:  I guess indifferent.

13              THE COURT:  Okay.

14              PROSPECTIVE JUROR:  Have any of your family members

15    been the subject of criminal investigation?  Just a cousin but

16    I don't have any details on it.

17              THE COURT:  Okay.  Thank you.

18              PROSPECTIVE JUROR:  Last four digits is 0141.

19         And I live in Long Beach.

20         And I just recently got my license as a registered nurse

21    here in California three days ago.  So I am currently job

22    hunting.

23         And I am not married.  Not in any relationship and no

24    children.

25         And this is first time to serve on a jury -- not served on
```

```
 1   a jury before.
 2              THE COURT:  Okay.
 3              PROSPECTIVE JUROR:  And no family members in law
 4   enforcement or any close friends.  And no negative encounters
 5   with the criminal justice system and no to any criminal
 6   investigation.
 7              THE COURT:  All right.  Thank you.
 8              PROSPECTIVE JUROR:  Number 9215.  I live in Santa
 9   Maria.
10       Currently I'm a student.  I'm going through the welding
11   program at Alan Hancock College.
12       Hopefully I will be certified next semester.
13       I'm single, no children.
14       I have never served on a jury before.
15       An uncle of mine was a bailiff for a while, but otherwise
16   no friends or family in law enforcement.
17       No negative encounters with the criminal justice system
18   and No. 9, besides a couple of misdemeanor fines in the past I
19   haven't had any criminal investigations or no one in my family
20   has had any investigations.
21              THE COURT:  All right.  Thank you.
22              PROSPECTIVE JUROR:  3158.  Palmdale.  I'm a teacher.
23   My husband is an aerospace mechanic.  I have no grown children.
24       I have never served on a jury before, and no to 7, 8
25   and 9.
```

1              THE COURT:  Thank you.

2              PROSPECTIVE JUROR:  No. 9616, West Covina,

3     California.  Housewife, married.

4         My husband is a pharmaceutical regional director.

5         I have four kids.

6         I have served on a jury before.  I reached a verdict.

7         I have a brother-in-law and a niece in law enforcement.

8     And no to 8 and 9.

9              THE COURT:  Same question I have asked of everyone

10    else.

11             PROSPECTIVE JUROR:  Brother-in-law undercover gang

12    unit.  Niece, Hollywood department.

13             THE COURT:  All right.  Can we not talk to our

14    brother-in-law in this case during the course of the trial?

15             PROSPECTIVE JUROR:  Yes.

16             THE COURT:  All right.  Thanks.

17             PROSPECTIVE JUROR:  7721.  I live in Sylmar with my

18    wife, account manager in healthcare.  A program manager.

19        Two school-aged children.

20        No -- I have not served on a jury before.

21        No law enforcement, but would not talk to them about it.

22        Yes, I have negative encounters.

23        Yes, family members have been investigated.

24             THE COURT:  I'm going to just leave it alone.  You

25    got no one in your family involved in law enforcement and you

1    won't talk to them about it.

2        Did I get that right?

3            PROSPECTIVE JUROR:  That's correct.

4            THE COURT:  You see why I stay confused?

5            PROSPECTIVE JUROR:  I say I know people in law

6    enforcement, but I won't talk to them about it.

7            THE COURT:  I thought it was NO, no people in law

8    enforcement.  Thank you.

9            PROSPECTIVE JUROR:  Number 7979.  I live in

10   Alhambra.

11       I am nursing assistant.

12       I am married, I have two children.

13       My children, they are in school.  This is the first time I

14   served on a jury.

15       No member of my family in law enforcement.

16       No negative encounters with the criminal justice system.

17   That's it.

18           THE COURT:  Thank you.

19           PROSPECTIVE JUROR:  5794.

20       The city I live in is Nipomo.

21       I'm a merchandiser for Coca Cola.  I just have a

22   girlfriend and she is a manager at a hotel.  I got one

23   daughter.

24       I have never been on a jury before.

25       No family members in law enforcement.  No negative

1    encounters and just a DUI.

2            THE COURT:  Where did you say you live?  What city?

3            PROSPECTIVE JUROR:  Nipomo.

4            THE COURT:  What is that again?

5            PROSPECTIVE JUROR:  Nipomo.

6            THE COURT:  Is that in America?

7            PROSPECTIVE JUROR:  It's like ten minutes away from

8    Santa Maria.

9            THE COURT:  A couple of you, you can carpool.  Cool.

10       Next?

11           PROSPECTIVE JUROR:  0151.  I live in Westchester.  I

12   work with the air freight ground crew at FedEx at LA Airport

13   and I am also a packaging technician with Anheuser Busch

14   Brewing.

15       I'm single.  I have no kids.

16       I have never served.  I don't know anybody in law

17   enforcement, nor have any family members have had any negative

18   encounters.

19       And neither I nor them have been in an investigation.

20           THE COURT:  Thank you.

21           PROSPECTIVE JUROR:  548 -- 5480.  I live in South

22   Los Angeles.  Occupation is illustrator assistant.  Married

23   with three kids.

24       I have sat on a jury before in a civil case.  It was

25   verdict on the civil case.  Number 7, Number 8, Number 9 is no.

```
 1                    THE COURT:  All right.  Thank you.
 2                    PROSPECTIVE JUROR:  3147.  I live in Fillmore.
 3                    THE COURT:  Wait a minute, who is 3147?
 4                    PROSPECTIVE JUROR:  I have to switch spots?
 5                    THE COURT:  Okay.
 6                    THE COURTROOM DEPUTY:  Switch spots.
 7                    PROSPECTIVE JUROR:  I live in Fillmore.  I'm a
 8     transcription/birth certificate registration for a hospital.
 9          I'm married, I have four children, 18, 10, 5, and 4.
10          I never served.  I have friends and family in law
11     enforcement.
12          8 and 9, yes.
13                    THE COURT:  Okay.  Thank you.
14                    PROSPECTIVE JUROR:  No. 3212.
15                    THE COURTROOM DEPUTY:  Wait, stop, stop.  It should
16     be 5480 who is next.
17                    THE COURT:  We did him.
18                    THE COURTROOM DEPUTY:  Oh, okay.
19                    PROSPECTIVE JUROR:  No. 3212.  I live in Los
20     Angeles.
21          I do admissions for a mental health hospital.  I'm not
22     married.  I'm in a relationship.
23          My partner is a plumber.
24          I have two children, and I have one on the way.
25          I have never served.
```

```
 1          I have two cousins that work for the law enforcement.  No
 2    negative encounters.  I do have a family member that was
 3    subject to a criminal investigation.
 4                THE COURT:  How did that work out?
 5                PROSPECTIVE JUROR:  He was deported.
 6                THE COURT:  How did that make you feel in terms of
 7    the system?  Was he treated fairly in your view?
 8                PROSPECTIVE JUROR:  I think he was because what he
 9    did was wrong.
10                THE COURT:  Okay.  Thank you.
11                PROSPECTIVE JUROR:  8096.  I am from South Central.
12    I'm currently a cook and a musician.
13          I'm currently not in a relationship.  I do not have
14    children.
15          I have never served on a jury before.
16          And 7 yes, 8 yes, and 9 no.
17                THE COURT:  Okay.  Explain 7 and 8.
18                PROSPECTIVE JUROR:  7 my friend's sister works for
19    LAPD.
20                THE COURT:  Okay.  Your friend's sister?
21                PROSPECTIVE JUROR:  Yes.
22                THE COURT:  Okay.  That is close.
23                PROSPECTIVE JUROR:  For 8, what would you like to
24    know?
25                THE COURT:  I don't really need to know the
```

1    specifics about what the negative encounter was.

2        My question is whatever it was, how did it impact you or

3    form your impressions of the criminal justice system?

4        For example, do you have any lingering feelings that the

5    system is somehow unjust, for example?

6            PROSPECTIVE JUROR:  Yes.

7            THE COURT:  Okay.  What part of the system do you

8    feel is unjust?

9            PROSPECTIVE JUROR:  Specifically, I'm not too sure.

10   It's just my thing is I'm a very understanding person, but I'm

11   the type of person to look at perspective, so I focus more

12   on -- more like I focus more on the points basically which is

13   what is presented, so yeah.

14           THE COURT:  All right.  Something happened, you

15   don't think this person was treated fairly by the system?

16           PROSPECTIVE JUROR:  Yeah.

17           THE COURT:  Oh God, I don't know what that means.

18       Yes, you agree with me this person was not treated fairly

19   by the system, is that what you are saying?

20           PROSPECTIVE JUROR:  I say yes to the last question

21   you asked.

22           THE COURT:  You agree that the person was not

23   treated fairly by the system?

24           PROSPECTIVE JUROR:  No, I would say he was.

25           THE COURT:  He was treated fairly by the system?

1          PROSPECTIVE JUROR:  That's what I was trying to

2     imply.

3          THE COURT:  All right.  Any part of the system you

4     feel let this person down or treated this person unfairly?

5          PROSPECTIVE JUROR:  No, not specifically.

6          THE COURT:  So you don't have any as a result of

7     this encounter or this experience, you don't have any lasting

8     negative feelings about the system?

9          PROSPECTIVE JUROR:  I do.  I just -- it's just

10    specifically I'm not sure what it is exactly.

11         THE COURT:  I'm not following that at all.  Yes or

12    no, do you have any negative feelings about the system?

13         PROSPECTIVE JUROR:  Yes.

14         THE COURT:  You do.  Can you tell me what aspect of

15    the system?

16         PROSPECTIVE JUROR:  As I was saying specifically I'm

17    not sure.

18         THE COURT:  Okeydoke.  All right.  Thank you.

19         PROSPECTIVE JUROR:  Number 9918.  I live in

20    Camarillo.  I'm an electrical designer.  I am married, my wife

21    is a part-time teacher and a personal trainer.  We have two

22    daughters.

23         I have served on a jury before.

24         It was a civil case.

25         I have a friend in law enforcement and no to 8 and 9.

1          THE COURT:  Okay.  All right.  We have got one to

2    go?

3          PROSPECTIVE JUROR:  4633.  I am a dentist.  I live

4    in Los Angeles.  Single, no children.  Served on a jury before.

5    Guilty verdict was done.  7, 8, 9, no.

6          THE COURT:  Excellent.  Thank you.  I need to see

7    counsel for a second.  Wait a minute, are we done, that was 45,

8    yes.  I need to see counsel for a second.

9       (Sidebar begins.)

10          THE COURT:  You know, I have seen stupid.  Does that

11   count as a rationale to excuse somebody for cause that you just

12   think is too stupid to be on the jury?

13          MR. KALOYANIDES:  I think so, but what is the

14   standard?

15          THE COURT:  I don't know.

16          MR. KALOYANIDES:  How stupid do you have to be?

17          THE COURT:  The good thing we're not going to get

18   anywhere close to that.

19       Now, a couple of things I did not mention before is this:

20   Language.  I don't know how many languages we have got in LA

21   County, probably close to 200, and that is cool, all right.

22       My only concern and should be yours is that I believe they

23   have the ability to effectively communicate to the other

24   members of the jury in the deliberation room.  It may be an

25   acquittal, right?  But better be able to, you know, understand

1   the English language.

2              MR. KALOYANIDES:  Right.

3              THE COURT:  That is my only concern, but the

4   problems as I see them in that regard are way back there.  I

5   don't believe it's going to be an issue.

6        I was really surprised at that caregiver, but all right.

7        There was one other thing that I was somewhat concerned

8   about, and this was the lady that was working at Dollar Store,

9   she also had a second job with the school.

10             MS. LEE:  Supervisor?

11             THE COURT:  Yes.  I was concerned about the fact

12  this may be a financial hardship on her.  She didn't say

13  anything about it, she is trying to be a good citizen and all

14  of that, and I appreciate that, but we got 45 people here.

15       And unless, you know, if you want to wait until the very

16  end, that is cool, to even consider it, fine.  That was the one

17  that I was really, really thinking about.

18             MR. PETERSON:  I have no problem with the lady with

19  two jobs for cause.

20             MR. KALOYANIDES:  I will stipulate.

21             THE COURT:  Thank you, gentlemen.  These people are

22  nice, hang on.  I will find her in a minute.  Dollar Store, No.

23  10, Ana Ruiz.

24       And see Ana didn't say anything that was going to signal

25  to anybody a thing.  9757.

```
1              THE COURTROOM DEPUTY:  That is cause?
2              THE COURT:  You let her go whenever you want.
3         Now, anybody else we should consider for cause?
4         What was that about?  She's just stupid.
5              THE COURTROOM DEPUTY:  It's okay.
6              MS. LEE:  Are we focusing on the first 12, Your
7    Honor?
8              THE COURT:  You can focus on the room for cause.  If
9    there is anybody that just jumps out at you, let them go.
10             MS. LEE:  I believe 7985, he is Juror No. 2, where
11   he said that he had a negative encounter with law enforcement.
12   He feels that law enforcement may treat people with darker skin
13   tone unfairly, and that was borne out by his personal
14   experience.
15             THE COURT:  Borne out by everybody dark-skinned
16   persons experience, young lady.  I hear what you are saying.
17        Now, if you want to bring him up here and see if you can
18   get him to actually form a sentence and find out what his
19   attitude is, but he's a college student, right?
20             MS. LEE:  I believe he said first year college
21   student.  He's about 18 or 19, I would imagine.
22             THE COURT:  We can talk to him.  I understand
23   exactly what you are saying.
24             MS. LEE:  Yes.
25             MR. KALOYANIDES:  I think it would be prudent
```

UNITED STATES DISTRICT COURT

```
 1    because when the Court was actually talking to the panel, that

 2    is when he made those comments.  And then in the actual

 3    answering of the questions, he said no negative law enforcement

 4    encounter, so I was going to follow-up on that anyway.

 5              THE COURT:  This generation spends so much time

 6    doing this, that they literally cannot talk.

 7         If it weren't for my law clerks, I would give up all hope

 8    for this generation.

 9         Mr. Ruiz, how are you, sir?

10              PROSPECTIVE JUROR:  Good, and you.

11              THE COURT:  Okay.  You have sparked a little

12    concern.  We want to delve into your attitudes towards law

13    enforcement a bit more.

14         I could be wrong, now, correct me if I'm wrong, but I got

15    the feeling you believe that law enforcement isn't necessarily

16    color blind, that they treat people of color, let's say, more

17    harshly or subject them to greater scrutiny than anyone else.

18    I may be wrong, tell me, what is your attitude?

19              PROSPECTIVE JUROR:  I just really think it depends

20    on the situation, and yeah, I guess the skin color of the

21    person like what they did.

22              THE COURT:  Where did you go to school.

23              PROSPECTIVE JUROR:  Cal State.

24              THE COURT:  Is that Cal State of Northridge.

25              PROSPECTIVE JUROR:  Yes.
```

1          THE COURT:  Can you flesh that out a bit for me?

2     You don't have to say the words, just go ahead, use all of the

3     words.

4          You say it depends on the situation.  That is a little

5     different than saying that they may be motivated more by a

6     person's color than what they are involved in, so, tell me what

7     do you really feel?

8          PROSPECTIVE JUROR:  No, because there was also an

9     incident where I was driving behind my friend which happens to

10    be African-American, and just because he was African-American

11    with another friend in the car and we were just pulling out of

12    school to go home, and he got pulled over for just having like

13    music on the car, like kind of loud, but that was it.

14         And I stopped because I was concerned as well, so I just

15    distanced myself away, and because they asked him for his ID

16    and he had his wallet in his glove compartment, and the cop

17    thought that he was going to do something, and they basically

18    almost killed my friend because he had his gun like ready and

19    he didn't want to do anything suspicious so he said, "Officer,

20    I'm just here to get my wallet."

21         And he made him get out of the car and the officer had to

22    get the wallet himself for I guess safety precautions.

23         Just ever since that incident, just like opened my mind

24    to, like, this is the society we live in, like, today.

25              THE COURT:  Yeah.  There are there are some dos and

```
 1    don'ts.  Don't keep your wallet in the glove compartment, that
 2    is one of them.
 3         Ms. Lee?
 4            MS. LEE:  Do you think you could -- you know, that
 5    is very scary to have something happen to somebody close to us,
 6    of course, but this case, as you have heard isn't about
 7    somebody being pulled over, right.  This case is like something
 8    that is entirely different involving very different law
 9    enforcement agents.
10            PROSPECTIVE JUROR:  Yes.
11            MS. LEE:  I don't know if you can't tell, there are
12    -- anyway, but do you think that if you were to find out that
13    defendant, you know, is of a different, like, I guess ethnicity
14    or race than law enforcement, do you think that might make him
15    more sympathetic?
16            PROSPECTIVE JUROR:  In what way.
17            MS. LEE:  Like, they had been targeting him or under
18    surveillance.
19            PROSPECTIVE JUROR:  Kind of does is that, like, I
20    guess appearance also matters.  So if like they have tattoos on
21    their face or head or all over their body or neck or affiliated
22    with the gangs or something, you mean like police or law
23    enforcement could be like surveilling them just looking over,
24    so maybe like in a way, like, they are surveilling him, but not
25    really until they actually do an action to, like, arrest the
```

1    person or whatever.

2         MS. LEE:  So I'm trying to unpack this a little bit.

3    So let's say law enforcement, you know, sees somebody who has

4    tattoos on, and that they know to be like in a gang and they

5    sort of keep a closer look out for him, they had them on their

6    radar, do you think that is kind of like isn't something law

7    enforcement should not do?

8         PROSPECTIVE JUROR:  Yeah, I feel like it would be

9    violating their own personal privacy, because, like, I mean,

10   even though, like, they have tattoos on their face or it

11   doesn't mean necessarily they are in a gang or a bad person

12   really.  So I mean I feel like they would be kind of like, I

13   guess, like intruding the person's own, like, space, even

14   though he could be doing something or not doing something.

15        MS. LEE:  So, I think we use the world surveillance

16   a lot.  We're not talking about, like, wiretaps or probable

17   cause, we're talking about law enforcement -- we're going to

18   see if he might want to engage in, you know, criminal

19   activities, like choosing that is unacceptable?

20        PROSPECTIVE JUROR:  Yeah, kind of, because again,

21   what I just said, it doesn't really matter if you have tattoos

22   or by your appearance, I mean, really it is based on like the

23   person you are.

24        MS. LEE:  What if, let's say law enforcement, and

25   they target suspects, they are in an area where it's not in LA

```
1    in a smaller town where they sort of they run into each other a
2    lot.
3              PROSPECTIVE JUROR:  Yes.
4              MS. LEE:  So there is a little bit of they know him,
5    they know that he has -- they have intelligence.
6              PROSPECTIVE JUROR:  But has he done like things
7    prior to them keeping like surveillance on him?
8              MS. LEE:  Say that person has criminal history,
9    would that change your answer?
10             PROSPECTIVE JUROR:  I mean --
11             MS. LEE:  You still seem very, like, uncertain about
12   it?
13             PROSPECTIVE JUROR:  If they give them -- whoever
14   like probation they tell him just to stay home or something,
15   then I mean you could I guess have surveillance, but I still
16   feel like it would be like not okay.  It would be like
17   violating his, like, own personal space or her space.
18             MS. LEE:  Do you have any questions?
19             MR. PETERSON:  No.  Thank you, I appreciate your
20   line of questioning.  I feel like you covered it.
21             MR. KALOYANIDES:  I have a fairly straightforward
22   question.
23        Do you think because of these views that you are going to
24   be more skeptical of law enforcement officers who testified
25   than just any other person, or are you going to evaluate their
```

```
 1    testimony in light of all of the evidence and weigh it as you
 2    should, as according to the criteria for credibility that you
 3    have.
 4         We all know how to judge a person's credibility.
 5         Are you going to give law enforcement that same fair shake
 6    as to their testimony or are you going to come to that saying,
 7    I'm going to probably not believe them as readily as someone
 8    else.
 9              PROSPECTIVE JUROR:  Yeah.  Kind of what you were
10    saying.  Like, I'm not sure if I would totally believe, like,
11    how you said the testimony of what they would be saying.
12              MR. KALOYANIDES:  Just because they are law
13    enforcement?
14              PROSPECTIVE JUROR:  Yeah.
15              MS. LEE:  I don't think we have any further
16    questions, Your Honor.
17              THE COURT:  Okay.  Thank you.
18         Tell me I shouldn't despair.  I don't even know what we
19    got out of that.
20         All right.  Do you feel reassured or?
21              MS. LEE:  I feel less reassured at this point.  I
22    feel like what I got out of him he feels that in this case,
23    like, I have sort of narrowed -- tailored my questions to be
24    general yet also kind of fit the facts for this case and the
25    fact that law enforcement targeted defendant and his
```

 1   co-defendants, they knew about him, from the answers I got was
 2   that he would have issues, he would have problems with law
 3   enforcement tactics such as that, Your Honor.
 4            THE COURT:  I think that generation is --
 5            MS. LEE:  Thankfully we have 45 jurors and they are
 6   all of various diverse ages and experience and generations,
 7   Your Honor.
 8            THE COURT:  You know, I don't feel under a great
 9   deal of pressure to exercise greater scrutiny to challenges for
10   cause ordinarily because we do have so many, but we also have
11   so many that are -- I will use the word weak.
12        What do you all think?  You have to go along with Ms. Lee.
13            MR. KALOYANIDES:  Well, my only final comment is I
14   think he was talking around the real issue.
15        He did try to say, well, clarify why would the law
16   enforcement be looking into him, was there something done?
17        I think the bigger problem is he said very clearly -- well
18   he said that he is going to hold them to a higher standard of
19   credibility, that is I think the problem.
20        I don't like him adopting my words, but I think that is
21   what he was saying.  He's going to hold them to a higher
22   standard.
23            THE COURT:  Why do I get the feeling that you two
24   switched roles?
25            MR. KALOYANIDES:  I feel the same way.

```
1              THE COURT:  I feel like Alice in Wonderland.  What
2    is going on here?
3              MR. KALOYANIDES:  I call it like I see it, Your
4    Honor.
5              THE COURT:  I love that, I do I think that is
6    perfect.
7         But No. 1, I don't know what to believe.  I'm not even
8    sure if he knows what to do with whatever his feelings are.
9              MS. LEE:  Yes, Your Honor.
10             THE COURT:  I'm much more concerned about the fact
11   that whatever his feelings are, he's not going to be able to
12   articulate them in the room.  And that to me really is
13   fundamentally for his ability to serve as a juror, he simply
14   can't speak.
15        However, at 8 o'clock, did you tell them already?
16             THE COURTROOM DEPUTY:  No, I did not.  But 7:45 for
17   the attorneys.
18             THE COURT:  Anybody else we need to talk about?  You
19   have got a motion?
20             MS. LEE:  Yes, Your Honor.
21             THE COURT:  No you don't.
22        Go ahead.
23             MS. LEE:  I would like to recuse Juror No. 2 for
24   cause.
25             THE COURT:  Anybody else have a feeling about this
```

1    one way or the other?

2            MR. KALOYANIDES:  No, Your Honor.

3            THE COURT:  Sean isn't saying anything, okay.  Your

4    cause and my cause are different, but okay.

5            MS. LEE:  Thank you, Your Honor.

6            THE COURT:  All right.  David Ruiz, I have got to

7    tell Sheila to take him out with her.

8        Anybody else?

9            MR. PETERSON:  Forgive me, are we still focusing

10   only on the box right now?

11           THE COURT:  You should.  You should.  Now, here is

12   the deal.  When it comes to cause if you want to reach out,

13   fine, you reach out, make them go away, because once we start

14   with the peremptory challenges, moving people out of the box,

15   because that is the only challenge of the first 12 seats.  And

16   then we start filling in, I want that to go uninterrupted.

17       So if there is anybody back there we don't even want in

18   the mix, let's get rid of them now, so that when we start with

19   these -- what is it 16 peremptory challenges, I just want it to

20   go smoothly, okay?

21           MR. KALOYANIDES:  That should be an easy one,

22   Number 40.

23           THE COURT:  Number 40 is the easiest one in here.

24           MR. KALOYANIDES:  That is the methamphetamine user.

25           THE COURT:  Lord have mercy, she's absolutely gone

```
 1   before she does any further damage.
 2        And 37, the caregiver, she can't communicate.  But that is
 3   just me.
 4             MR. KALOYANIDES:  She was one on my list as well.
 5             MR. PETERSON:  That is right.
 6             THE COURT:  37.
 7        There was a mother here, too.  Where is my mother?  You
 8   know, my mother, mother?
 9             MR. KALOYANIDES:  It's 42.
10             MS. LEE:  You are right.
11             THE COURT:  Where is my expectant mother?
12             THE COURTROOM DEPUTY:  She's over here.
13             THE COURT:  Go take a break now, right this minute.
14             MS. LEE:  Juror Number 43, Your Honor, the 8096, he
15   is sitting way in the back.  He said he's a musician.
16             THE COURT:  He's an idiot.
17             MS. LEE:  He also said to have negative experience
18   with law enforcement.  He says that he has negative feelings
19   about the system in general.
20             THE COURT:  He can't articulate what they are.  You
21   see this one here, that is Number 43?
22             MS. LEE:  Yes, Your Honor.  So, he just generalized
23   that he --
24             MR. KALOYANIDES:  I will make a stipulation.
25             THE COURT:  Let me join the stipulation, he's gone
```

1    all right.

2          We're getting rid of really the ones that I think are

3    really problematic.

4          Just for your information, Number 41, according to Sheila,

5    we didn't think we would get down this far so it wasn't going

6    to be a problem, but apparently he's got a long awaited medical

7    appointment coming up, but she says it's not going to be an

8    issue because there is no way we're going to get down to 41.

9          Me, I don't know, I just as well put their mind at ease

10   and let them go.

11               MS. LEE:  5480.

12               MR. KALOYANIDES:  I'm fine with letting him go.

13               MS. LEE:  Yes.

14               THE COURT:  I'm going to put cause because I don't

15   know any other way to deal with this.

16         All right.  Okay.  Now, let's -- I want you all to have an

17   opportunity to question these people, okay?

18         Don't question 50 on the list that the entire speech

19   instructing him on the law, et cetera but go ahead and ask your

20   follow-up questions.

21               MR. KALOYANIDES:  One quick question.  I was going

22   to make a motion right now, for 12.  She was the first one to

23   speak up during the Court's conversations with the presumption

24   of guilt.

25               THE COURT:  Yes.

 1          MR. KALOYANIDES:  I don't know how the government

 2   feels if they would stipulate challenge for cause.

 3          MR. PETERSON:  We would stipulate.

 4          THE COURT:  She was pretty bad.  I have never had

 5   this many for cause.

 6       All right.  Who wants to start?  I don't care.

 7          MR. KALOYANIDES:  Government would start on the voir

 8   dire.

 9          THE COURT:  I always let the other side start, you

10   take notes.  Go for it.

11       (Sidebar ends.)

12          THE COURT:  I need to see counsel briefly.

13              (Off-the-record discussion.)

14          THE COURT:  All right.  Ladies and gentlemen, the

15   lawyers are now going to have an opportunity to conduct a bit

16   of an examination of you, similar to, well, what the Court has

17   just gone through with you.

18       They have a few follow-up questions.  And once that is

19   done then we are going to begin the process of -- well,

20   elimination.  No, let's put it another way, selection.

21   Selection.

22       By flip of the coin, the government is going to start.

23          MR. PETERSON:  Your Honor, shall I go to the podium?

24          THE COURT:  At the lectern, yes, please.

25          MR. PETERSON:  Hello, everybody, Sean Peterson and I

1    have just a few questions touching on a couple of the topics

2    that the Judge brought up earlier today.

3        The first one is there any member of the jury panel who

4    feels that the narcotic laws of this country are in any manner

5    unfair or unconstitutional?

6        Do you feel that way?

7            PROSPECTIVE JUROR:  Can I expound on it?

8            MR. PETERSON:  I guess if you don't mind waiting for

9    the microphone.

10           PROSPECTIVE JUROR:  Sure.  I mean --

11           MR. PETERSON:  Sir, if you could do us the favor of

12   repeating your number, too.

13           PROSPECTIVE JUROR:  7721.  There we go.

14           MR. PETERSON:  Thank you.

15           PROSPECTIVE JUROR:  Yeah, the sentencing for crimes

16   related to narcotics are not even, you know, so for one type of

17   narcotics versus another, there is a harsher sentence and a

18   lighter sentence depending on what narcotic it is.

19           MR. PETERSON:  Are you familiar with the First Step

20   Act that was recently in the news within the last several

21   months?

22           PROSPECTIVE JUROR:  No I'm not, actually.

23           MR. PETERSON:  A different question, but just

24   following up on this line.

25       Do you feel like despite your feelings about what you

1    understand to be a sentencing implication relating to different

2    types of narcotics that you would be able to put that aside and

3    follow the instructions on the law as it would be given to you?

4            PROSPECTIVE JUROR:  Yeah, I could follow

5    instructions.  I probably wouldn't like it, but yeah.

6            MR. PETERSON:  Okay.  Thank you very much.

7        Now, another general question to the whole jury venire,

8    but in the same general topic area.

9        Is there any member of the jury panel who has such strong

10   personal or philosophical beliefs about the general subject

11   matter of our drug laws that it would prevent that person from

12   being fair to both sides in this case?

13       Seeing no hands, I will continue.

14       I'm changing to a slightly different subject matter area

15   now.

16       The topic area I would call law enforcement techniques,

17   you will hear recordings of conversations that were recorded by

18   a confidential informant who participated in conversations

19   without the knowledge of other participants in this case.

20       Do you have any feelings about the use of such recordings

21   that would affect your ability to be fair and impartial as a

22   juror in this case?

23       Seeing no hands, I will go on to what I think is my last

24   question.

25       Is there any member of the jury panel who objects to the

1   government's use of confidential informants during a criminal

2   investigation?

3       Seeing no hands, Your Honor, I have no further questions.

4           THE COURT:  Thank you, sir.

5           MR. PETERSON:  Thank you.

6           MR. KALOYANIDES:  Thank you, Your Honor.

7       Good afternoon, ladies and gentlemen.  I'm David

8   Kaloyanides.  Again, I represent Mr. Gomez.

9       Sitting here right now I would like you to ask yourself

10  this question:  If you were seated where Mr. Gomez is seated

11  would you want you on your jury?

12      If you were a defendant in this case, would you want

13  yourself to be on the jury?

14      If anyone's answer is no, please raise your hand.

15          PROSPECTIVE JUROR:  The reason why -- the reason why

16  I say that is because, again, my brother is an investigator for

17  the District Attorney.  I know how hard he works to collect the

18  data.

19          THE REPORTER:  The audio isn't on the microphone.

20          PROSPECTIVE JUROR:  Again, my brother is an

21  investigator at the DA's office in Orange County, and I know

22  how hard he works to collect the data.

23          MR. KALOYANIDES:  Collect the data.  What do you

24  mean by that?

25          PROSPECTIVE JUROR:  Evidence.

1           MR. KALOYANIDES:  So he's diligent at working and

2    why would that make you not want you to be on the jury?

3           PROSPECTIVE JUROR:  Because I know once he collects

4    the data, he's a very, very fair person.  I know him all my

5    life, of course.  That I know the data he collects is very

6    true.

7           MR. KALOYANIDES:  Okay.  Now, the government read

8    off a list potential witnesses and nobody raised their hands as

9    to knowing them.

10         You don't know any of the witnesses, because you didn't

11   raise your hand, right?

12          PROSPECTIVE JUROR:  Correct.

13          THE COURT:  So if I'm hearing you correctly, you

14   your trust in what -- is it your brother or brother-in-law?

15          PROSPECTIVE JUROR:  My brother.

16          MR. KALOYANIDES:  Your trust is because you know

17   your brother, right?

18          PROSPECTIVE JUROR:  That's correct.

19          MR. KALOYANIDES:  Does that mean you are going to

20   treat all law enforcement, people you never met, with that

21   benefit of the doubt?

22          PROSPECTIVE JUROR:  Yes, most likely.

23          MR. KALOYANIDES:  Thank you.  Anybody else would not

24   want themselves on this jury?

25         Back there, what is your number, sir?

1        PROSPECTIVE JUROR:  I think I can be fair, but right

2   now I'm in the stage, as a dentist, I have been through this

3   twice already in this whole situation, and it is very for me,

4   it's very, I don't know, uncomfortable and very -- those two

5   times that I had those experiences, I don't know -- you cannot

6   sleep, you cannot do anything, it's just -- it's just something

7   that -- I don't feel like that right now, to be in charge of

8   somebody's situation, even though I haven't heard anything.  I

9   don't feel like that comfortable.  I don't know.

10       And still everything -- they have to prepare -- everybody

11  -- dentist nobody like dentists, and I was trying to soothe you

12  or something, you have to write notes and so many stuff, it's

13  too much.  Thank you.

14        MR. KALOYANIDES:  Thank you.

15        THE COURTROOM DEPUTY:  3147.

16        PROSPECTIVE JUROR:  3147.  So you are asking if I

17  was him would I want myself on this jury?

18        MR. KALOYANIDES:  No, if you were the defendant in

19  this case, would you want someone like you on this jury?

20        PROSPECTIVE JUROR:  No.

21        MR. KALOYANIDES:  Thank you.

22       Now, Mr. Peterson asked several questions to everybody

23  about feelings about the drug laws being too harsh or not harsh

24  enough.

25        The Court is going to tell you what the law is.  Is there

1  anybody who feels that because of a personal belief or

2  conviction about what our laws are they would not be able to

3  follow whatever the judge says is the law?

4        Anybody can't do that?

5        We change the laws typically once a year, that is called

6  Election Day.  When the judge gives us the instructions those

7  are the rules for the case.

8        Everybody -- anybody who can't follow that?

9        Okay, great.  Now I have couple of specific questions,

10  just to follow-up, it may be that I misheard or didn't write

11  down my notes clearly so I apologize if we're going over things

12  we already talked about.

13        Juror in Seat Number 5, you work for the City of Pasadena?

14              PROSPECTIVE JUROR:  Correct.

15              MR. KALOYANIDES:  In what capacity?

16              PROSPECTIVE JUROR:  I work in the city managers

17  office in the economic development division.

18              MR. KALOYANIDES:  All right.  Do you have contact

19  with law enforcement in that position?

20              PROSPECTIVE JUROR:  Informally, yes.

21              MR. KALOYANIDES:  Not as part of your regular

22  duties?

23              PROSPECTIVE JUROR:  Correct.

24              MR. KALOYANIDES:  Thank you.

25        Juror in Seat Number 7, you said you were a student?

1            PROSPECTIVE JUROR:  Yeah.

2            MR. KALOYANIDES:  Do you have a major course of

3    study?

4            PROSPECTIVE JUROR:  I have an exam actually on

5    Thursday, so if this trial goes through Thursday, I won't be

6    able to attend.

7            MR. KALOYANIDES:  Is this something you can't make

8    up?

9            PROSPECTIVE JUROR:  I already asked the professor,

10   and he said you have to drop the class or fail it and retake it

11   another quarter.  I can't afford to do that.

12           MR. KALOYANIDES:  Thank you for letting us know.

13       Anybody else that has something critical like that that is

14   going to interfere this week?

15       Let's start up here.

16           PROSPECTIVE JUROR:  4719, I have already had a few

17   days with my schedule.  I don't control it unfortunately.  My

18   offices do and it's really hard for me to take off work right

19   now as I'm taking care of student loans for myself as well as

20   helping my mom financially, so if this is going to go on all

21   week I don't know if I will be able to do that.

22           MR. KALOYANIDES:  Your employer doesn't pay for jury

23   duty?

24           PROSPECTIVE JUROR:  No.

25           MR. KALOYANIDES:  There was somebody on the first

```
 1   row?
 2              PROSPECTIVE JUROR:  0400.  My company doesn't pay
 3   me.  I'm just wasting time here.
 4       I do ten-hour shifts.  I'm a truck driver and I work in
 5   longshoreman.  And I haven't slept yet.
 6       I have got to work five, six days a week.
 7       I'm on probation for four more years to go so I need an
 8   excuse but they won't pay me for this.
 9              MR. KALOYANIDES:  Okay.  Thank you.
10              PROSPECTIVE JUROR:  I don't know the duration of
11   this case.  I have vacation planned for last one year, I will
12   be leaving on the 17th of April to go out of country.
13              MR. KALOYANIDES:  I think the Court will guarantee
14   we will be done long before that.
15              THE COURT:  If this case is still going on by the
16   17th, I will kill myself.
17              PROSPECTIVE JUROR:  7985, I'm also a full-time
18   college student athlete.  I have a mid term for my history
19   class on Thursday as well.
20              MR. KALOYANIDES:  Okay.  Thank you.
21        One moment, Your Honor.
22              THE COURT:  Uh-huh.
23              MR. KALOYANIDES:  All right.  Thank you very much,
24   Your Honor.
25              THE COURT:  Yes.  We are going to take 15 minutes.
```

1    Remember where you are seated, and don't talk about the case.

2            (JURY PANEL EXITS COURTROOM AT 3:01 P.M.)

3                      (Sidebar begins.)

4            THE COURT:  In a lot of respects this worked out

5    okay because we had talked about some of these same people, so

6    it's going to be all right.

7            MR. KALOYANIDES:  I guess I opened up the can of

8    worms on availability.

9            THE COURT:  Leave that to the jury room, otherwise,

10   we stand back in a can of mess.

11           MR. KALOYANIDES:  I have never had a short trial

12   without a hardship before.

13           THE COURT:  But whatever, okay.

14           THE COURTROOM DEPUTY:  Judge, do you want this?

15           THE COURT:  No, I started on another one, that one

16   I'm confident about.  Do whatever you feel like for that one.

17           MR. KALOYANIDES:  So, Number 2 has his say?

18           THE COURT:  Okay.  Number 2, we discussed letting

19   him go to begin with, so that's not an issue, he is still gone.

20           MR. KALOYANIDES:  All right.

21           THE COURT:  Number 2 is gone.

22           MR. KALOYANIDES:  Number 7 was the one who said he

23   had an exam Thursday?

24           THE COURT:  That was new.

25           MR. KALOYANIDES:  That is the new one.

1    THE COURT:  I don't care.  Been there, done that,

2  had to repeat semesters over and over, you know, it took me

3  14 years to finish under grad for this kind of crap, over and

4  over again, dropping out, not taking exams, it wasn't for jury

5  duty, but still.  I feel his pain and I don't care.

6    I don't care whatever you guys want to do with Number 7.

7    MS. LEE:  I think he probably would have a lot of

8  problems.

9    MR. KALOYANIDES:  I don't think it would help the

10  deliberation process at all.

11    THE COURT:  It's also a problem in our longshoreman

12  up there, if he's not sleeping then he's not going to be

13  listening to the evidence anyway.

14    MS. LEE:  The fact that he said this is a waste of

15  time for me.  It makes me also question his commitment to civil

16  service.

17    MR. KALOYANIDES:  That was Number 14.

18    THE COURT:  14, all right.  He's gone.

19    This idiot, this was the architect, this blind faith, this

20  is almost -- let me be quiet.  I tend to be judgmental,

21  Number 11.

22    MR. KALOYANIDES:  Yeah.

23    THE COURT:  My brother does this, and he is

24  meticulous in his gathering of data, therefore --

25    MS. LEE:  It speaks well of his brother, that is to

1    be expected.

2           MR. KALOYANIDES:  But he did say that he thinks all

3    law enforcement would be that way.

4           THE COURT:  How does he do this?

5           MR. KALOYANIDES:  I don't know if he's trying to get

6    off.

7           THE COURT:  That was great.  That was great.

8        Are all architects that stupid?  Well, did it work, that

9    is the question, did it work?

10          MR. KALOYANIDES:  It worked for me.

11          THE COURT:  Sean, did it work for you?

12          MR. PETERSON:  Yeah.

13          THE COURT:  It worked for me.  I'm not feeling

14   Number 17, the registered dental hygienist.

15          MS. LEE:  She's the one that would not be getting

16   paid for jury service.

17          MR. KALOYANIDES:  That was that 17.

18          MS. LEE:  She had a boyfriend.

19          MR. KALOYANIDES:  I have it down as 16.  I just miss

20   counted.

21          THE COURT:  What are you talking about and why are

22   we hearing about it?

23          MR. KALOYANIDES:  I got lost on what his concerns

24   were with the jury system based on a suicide that should have

25   been ruled on what homicide?

1          THE COURT:  Homicide, whatever, she didn't, but she

2    wasn't involved with the guy at the time, so what has this got

3    to do with you dear?

4          MS. KALOYANIDES:  Are we agreeing she's out?

5          THE COURT:  I'm saying she's an idiot, I don't even

6    understand what the hell she's talking about, and I'm not

7    really feeling this thing.

8       The Court is going to give them 80 bucks or something and

9    then she -- we're going to be done, no matter what, Friday,

10   it's over.  So, it's only a four-day deal anyway.

11      I'm not feeling her.  Now, you want to bump her using your

12   peremptories?

13         MR. PETERSON:  I think we're okay for cause on 17.

14         THE COURT:  If that's what you want, she's gone for

15   cause.

16         MR. KALOYANIDES:  40 has already been out so that is

17   not an issue.  I think that was all of them.

18         THE COURT:  What about 19, did we already talk about

19   19?

20         MS. LEE:  She's the stay-at-home mom.  She has a six

21   year old daughter.

22         THE COURT:  Why do I have her down as already

23   excused for cause?  That is probably wrong.

24         MS. LEE:  I'm not sure I have anything for her.

25         THE COURT:  That is probably wrong.

```
 1              THE COURTROOM DEPUTY:  Which juror is that?
 2              THE COURT:  It should -- I think I put a C on that,
 3   it should have been for Number 10.  No one can remember.  I
 4   don't have any notes.
 5              THE COURTROOM DEPUTY:  She was already excused.
 6              MR. KALOYANIDES:  I have my own concerns with her
 7   but I didn't have any cause by that.
 8         The only other one --
 9              THE COURT:  Put her back on.  I was wrong.  I find
10   it is so much easier if I'm wrong.
11              MS. LEE:  She hasn't said anything.
12              MR. KALOYANIDES:  The only other one and I doubt we
13   would get to him is -- I'm not even sure how this came up based
14   on my questions, but the dentist who feels like everyone wants
15   to sue him?
16              THE COURT:  What the hell is that?
17              MR. KALOYANIDES:  I don't know, I like my dentist.
18              THE COURT:  Dude, everybody likes their dentist.
19   Like everybody likes their fireman.
20         Yeah, I'm not feeling him, and he's tired of wasting time
21   because he has been sitting here all day.  It's like we would
22   be feeling.
23         All right.  Government?
24              MR. PETERSON:  I think we would stipulate to the
25   dentist that he is going.
```

```
 1              THE COURT:  If that is what you want, he's gone.  I
 2   didn't like how he finds the whole jury experience
 3   uncomfortable.  I guess sitting in judgment of other folks,
 4   that was a bit of an issue.
 5        All right.  That is it.  That is a lot of people.
 6              MR. KALOYANIDES:  I guess, are we going to refill?
 7              THE COURT:  Yeah, we're going to refill the box.
 8   With 16 challenges, we're barely going to have enough people,
 9   and 19 is more than barely enough, a little drama, okay.  We
10   will be all right.
11              MR. KALOYANIDES:  I think so.
12              THE COURT:  Unless you guys go hog wild on your
13   peremptories, and how hog wild can you go?
14        We have already done it, you have gotten -- so no matter
15   what, we will still have 19 people.
16              THE COURTROOM DEPUTY:  More people for cause?
17              THE COURT:  Let's go through them, Number 2.
18              THE COURTROOM DEPUTY:  She was already excused.
19              THE COURT:  12.
20              THE COURTROOM DEPUTY:  Yes.
21              THE COURT:  14.
22              THE COURTROOM DEPUTY:  Okay.
23              THE COURT:  17.
24              THE COURTROOM DEPUTY:  Okay.
25              THE COURT:  Two pages of just wonderful citizens,
```

```
1    and then we get to the last page and the bottom falls out.

2              THE COURTROOM DEPUTY:  Okay.

3              THE COURT:  37, can't speak English.

4              THE COURTROOM DEPUTY:  37 was already.

5              THE COURT:  40 because she's an asshole.

6              THE COURTROOM DEPUTY:  I already had that, 41 I

7    don't remember why.

8              THE COURT:  Medical appointment.

9        That's what it was, and 43?

10             THE COURTROOM DEPUTY:  I have that.

11             THE COURT:  Because he's an idiot, I'm never going

12   to Taco Bell again.  Our dentist Number 45.

13             THE COURTROOM DEPUTY:  Number 45.

14             MR. KALOYANIDES:  I think we have a few additional

15   Your Honor.

16             THE COURT:  He's making this up as he goes along.

17             MR. KALOYANIDES:  He has an exam Thursday.

18             THE COURT:  Number 7, he's a student.

19             MR. KALOYANIDES:  Mr. Architect, Number 11.

20             THE COURT:  Architect Number 11.  Did I mess up, I

21   got the seating in the wrong place.

22             THE COURTROOM DEPUTY:  No, you had 12 too.

23             MR. PETERSON:  10, 11 and 12.

24             THE COURT:  Isn't anyone acceptable anymore?  10, 11

25   and 12, and 14, 17.
```

 1          THE COURTROOM DEPUTY:  Then the last page, which is

 2    seven -- it's not the entire last page, 47, 41, 43, and 45.

 3        So I want to go over this again because I just came into

 4    this.

 5          THE COURT:  Uh-huh.

 6          THE COURTROOM DEPUTY:  So, Number 2, Number 7,

 7    Number 10, 11, 12, 14, 17.

 8          MR. KALOYANIDES:  Yes.

 9          THE COURTROOM DEPUTY:  37, 40, 41, 43.

10          MR. KALOYANIDES:  Yes.

11          THE COURTROOM DEPUTY:  44?

12          MR. KALOYANIDES:  45.

13          THE COURTROOM DEPUTY:  All right, 45.  I'm going to

14    make changes to our electronic program and I will do that.

15          MR. KALOYANIDES:  I guess we're going to reseat the

16    box.

17        (Sidebar ends.)

18          THE COURTROOM DEPUTY:  All rise for the jury panel.

19          (JURY PANEL ENTERS COURTROOM AT 3:22 P.M.)

20          THE COURTROOM DEPUTY:  You may be seated.

21        Please remain seated and come to order.

22          THE COURT:  Okay.

23          THE COURTROOM DEPUTY:  This Court is again in

24    session.

25          THE COURT:  All right.  All attorneys and the jury

1    and counsel are present.

2         All right.  Go ahead, Val.

3              THE COURTROOM DEPUTY:  Juror 7985, you are excused.

4    Please return to the jury assembly room.

5         Juror 8957, you are excused.  Please return to the jury

6    assembly room.

7         Juror 3511, you are excused.  Please return to the jury

8    assembly room.

9         Juror 3750, you are excused.  Please return to the jury

10   assembly room.

11        Juror 0400, you are excused.  Please return to the jury

12   assembly room.

13        Juror 4719, you are excused.  Please return to the jury

14   assembly room.

15        Juror 7979, you are excused.  Please return to the jury

16   assembly room.

17        Juror 7979, Juror 3147, please return to the jury assembly

18   room.

19        Juror 5480, you are excused.  Please return to the jury

20   assembly room.

21        Juror 8096, you are excused.  Please return to the jury

22   assembly room.

23        And Juror 4633, you are excused.  Please return to the

24   jury assembly room.

25              THE COURT:  Let's fill it in.

1          MR. KALOYANIDES:  Your Honor, I believe there is one

2     more.

3          THE COURT:  Okay.  Which one?  What number?  Not ID

4     number, if you know.

5          MR. KALOYANIDES:  If I can confer with government

6     just to make sure.

7          THE COURT:  Sure.

8          MR. KALOYANIDES:  Thank you, Your Honor.

9          THE COURT:  We already took care of it?

10          MR. KALOYANIDES:  Yes.

11          THE COURTROOM DEPUTY:  Ladies and gentlemen, I'm

12     going to ask you to please move down.

13          THE COURT:  Come down the steps, walk around.

14     Perfect.

15          THE COURTROOM DEPUTY:  Okay.  Juror 7425, please

16     come forward.

17        Juror 5882, please come forward.  Last row.

18        Juror 1660, please come forward.

19        Juror 9364, please come forward.

20        Juror 5659, please come forward.

21        Juror 1095, please come forward.

22          THE COURT:  All right.  Before they get too

23     comfortable, let's begin with our peremptory challenges

24     beginning with the government, you are first.

25          MS. LEE:  The government would like to thank and

1    excuse Juror No. 4535.

2              THE COURT:  What seat are they in?  Turn around.

3              MS. LEE:  I believe it's Juror Number 6.

4              THE COURT:  Juror Number 6.

5         Is that your juror number, 4535?

6              PROSPECTIVE JUROR:  Yes.

7              THE COURT:  Thank you.  You can return to the first

8    floor.

9         Thank you.  The defense's first.

10             MR. KALOYANIDES:  Thank you, Your Honor.  The

11   defense would ask the Court to thank and excuse the juror

12   seated in Number 4, 2644.

13             THE COURT:  Thank you, sir.  Return to the first

14   floor.

15             THE COURTROOM DEPUTY:  May I ask you to scoot down

16   this way?

17             THE COURT:  You know what --

18             THE COURTROOM DEPUTY:  The two on the end?

19             THE COURT:  I need you in the group of 12 at least

20   and then you will never move again, I swear.

21             PROSPECTIVE JUROR:  It's okay.  I can move.

22             THE COURT:  All right.

23             THE COURTROOM DEPUTY:  Juror 4647, please come

24   forward.

25        Juror 7393, please come forward.

1          MS. LEE:  The government would like to thank and

2   excuse Juror Number 6811, who is seated in juror number Seat 5.

3          THE COURT:  All right.  Thank you, sir, you may

4   return to the first floor.

5       The defense second?

6          MR. KALOYANIDES:  Thank you, Your Honor.  The

7   defense would ask the Court to thank and excuse the juror

8   seated in Seat 6, 5067.

9          THE COURT:  Thank you, sir.  You may return to the

10  first floor.

11         THE COURTROOM DEPUTY:  If could you please move

12  down.

13         THE COURT:  Just keep working at it.

14         THE COURTROOM DEPUTY:  Juror 0150, please come

15  forward.

16      Juror 7237, please come forward.

17         THE COURT:  Okay, David.

18         MR. KALOYANIDES:  Thank you, Your Honor.  The

19  defense would ask the Court to thank and excuse the juror

20  seated in Seat Number 8, 5882.

21         THE COURT:  Thank you, ma'am.  You may return to the

22  first floor.

23      All right.  The government's third.

24         MS. LEE:  The government would like to thank and

25  excuse Juror No. 166 -- 1660, currently seated in Juror

1   Number 9.

2           THE COURT:  I didn't think you would ever have to

3   move again.  Thank you, ma'am.

4           THE COURTROOM DEPUTY:  Everyone else please move

5   down.

6           THE COURT:  The defense next?

7           THE COURTROOM DEPUTY:  Do we need to call two more

8   jurors?

9       Juror 8089, please come forward.

10      Juror 79 -- excuse me, Juror 9448, please come forward.

11          THE COURT:  All right.  The defense's fourth.

12          MR. KALOYANIDES:  Thank you, Your Honor.  The

13  defense would ask the Court to thank and excuse the juror

14  seated in Seat 9, 5659.

15          THE COURT:  All right.  Ma'am, you may return to the

16  first floor.

17      Thank you.  You are going to make your vacation and I

18  don't have to kill myself.

19          THE COURTROOM DEPUTY:  Don't move just get yet,

20  please.  Thank you.

21          MR. KALOYANIDES:  One moment.

22          THE COURT:  One more.

23          MR. KALOYANIDES:  Thank you, Your Honor.  The

24  defense would ask the Court to thank and excuse the juror

25  seated in Seat 5, 7992.

1          THE COURT:  Thank you, sir, you may return to the

2     first floor.  Thank you.

3          THE COURTROOM DEPUTY:  Juror 1416.  Please come

4     forward.

5       Juror 5715, please come forward.

6          THE COURT:  Government's fourth.

7          MS. LEE:  Thank you, Your Honor.  The government

8     would like to thank and excuse Juror No. 1416 seated as Juror

9     Number 15.

10          THE COURT:  Ms. Lee, come here.

11       (Off the record.)

12          THE COURT:  Defense sixth?

13          MR. KALOYANIDES:  Thank you, Your Honor.  The

14     defense would ask the Court to thank and excuse the juror

15     seated in Seat 6, 7425.

16          THE COURT:  Thank you, sir.  You can return to the

17     first floor.

18          THE COURTROOM DEPUTY:  Juror 0141, please come

19     forward.

20       Juror 9215, please come forward.

21          THE COURT:  Wait, wait, wait.  Defense 7th.

22          MR. KALOYANIDES:  Thank you, Your Honor.  The

23     defense would ask the Court to thank and excuse juror seated in

24     Seat 12, 8089.

25          THE COURT:  Thank you, sir.  The government's fifth?

1          MS. LEE:  Your Honor, I believe the Government's two

2   strikes left, would it be possible to reserve two?

3          THE COURT:  Pass.

4          MS. LEE:  Would it be possible to pass, Your Honor?

5          THE COURT:  Government passes.  Yeah, defense 8th.

6          MR. KALOYANIDES:  One moment, Your Honor.

7          THE COURT:  Uh-huh.

8          MR. KALOYANIDES:  Your Honor, the defense would ask

9   the Court to thank and excuse juror seated in Seat 5, 8854.

10         THE COURT:  All right, ma'am, you may return to the

11  first floor.  Thank you.

12         PROSPECTIVE JUROR:  Thank you.

13         THE COURT:  Juror 3158, please come forward.

14     Juror 9616, please come forward.

15     Defense's 9th.

16         MR. KALOYANIDES:  Defense passes, Your Honor.

17         THE COURT:  The government's fifth?

18         MS. LEE:  The government passes, Your Honor.

19         THE COURT:  We have a jury.

20     Let's talk about numbers, very briefly.

21     (Sidebar begins.)

22         THE COURT:  You guys are getting to the point where

23  you are going to have some dregs on the jury, like, stop,

24  please.

25     I don't know that we need any more than 12, because I

```
1   think you are going to be in and out this week, but I'm not
2   going to make that call.  I will leave it up to you all, but we
3   can get down to six, and then we will have to start getting
4   stips or something.
5            MR. PETERSON:  I always think it's prudent to have
6   two alternates just in case of a rainy day.
7            THE COURT:  We lost two on first day, so I have to
8   agree with that, so I don't mind.
9        Another thing we can talk about is this:  Do you want them
10  to know who the alternates are?
11           MS. LEE:  Your Honor, I never can decide on that.  I
12  would vote not to let anybody know who they are.
13           THE COURT:  I agree with you, I don't want anybody
14  falling asleep.
15           MR. KALOYANIDES:  I much prefer when nobody knows
16  who is actually going back there.
17           THE COURT:  I think that is the right move, okay.
18       All right.  Reach up in there and tell two people to go
19  away.
20           MR. KALOYANIDES:  Let me have another moment.
21           THE COURT:  And by the way, I will wait until he
22  gets back.  You know, to the extent that you all were relying
23  on, you know, this placement, and the numbers, and anything
24  over 12 that is going to be an alternate, to the extent that
25  you are relying on that, we can still stick with the original
```

```
 1   plan in terms of not letting them know who they are -- or 14,
 2   who is going to go back into the jury room.
 3             MR. KALOYANIDES:  We know they just don't need to
 4   know.
 5             THE COURT:  Like to the extent you were looking at
 6   these people, and deciding who you were going to let go.
 7             MR. KALOYANIDES:  Your thoughts.
 8             THE COURT:  Whatever you want to do.
 9        You are really smooth.  Thank you, dear.  You are not
10   going to let them know who the alternates are.
11             THE COURTROOM DEPUTY:  Okay.
12             THE COURT:  But the issue is which ones are you
13   going to let go?
14             THE COURTROOM DEPUTY:  I see.
15             THE COURT:  We're going to keep 14.
16             THE COURTROOM DEPUTY:  Okay, but which 14?
17        Well, I have the numbers, so don't confuse me as they were
18   seated.
19             THE COURT:  All right.  Who is next?
20             MR. KALOYANIDES:  Seat 13, that is the RN, right?
21             THE COURTROOM DEPUTY:  Right.
22             MR. KALOYANIDES:  Who is in 14?
23             MR. PETERSON:  The last two people who were called
24   up there, I don't know who is in what seat.
25             THE COURTROOM DEPUTY:  Diaz is seated in 13.
```

```
1              MR. KALOYANIDES:  Right, who is in seat 14?

2              THE COURTROOM DEPUTY:  14, that would be --

3              MR. KALOYANIDES:  What is the last four numbers?

4              THE COURTROOM DEPUTY:  That would be 9215.

5              MS. LEE:  14 is what?

6              MR. KALOYANIDES:  Do we just have one peremptories

7    each or?

8              THE COURT:  Just excuse one, I don't care who.

9              MR. PETERSON:  That works because the alternate just

10   to make sure we are on the same --

11             THE COURT:  No, no, we are going to excuse to go

12   away.

13        We have too many.  We have got 16 up here now.

14             MS. LEE:  In that case, I would like to excuse 4141,

15   who is apparently Juror Number 13.  Just became a registered

16   nurse.

17             THE COURT:  Okay.  Pick one, David.

18             MR. KALOYANIDES:  35; is that right?

19             THE COURT:  On the list -- 35 on the list?

20             MR. KALOYANIDES:  The one is that 35.

21             THE COURTROOM DEPUTY:  9616.

22        All right.  So those two are excused?

23             THE COURT:  Yeah, that makes sense.  That makes

24   sense, good.

25        All right.  What I'm going to do now if Terri says okay,
```

1    I'm going to pre-instruct.

2         We're not going to get any further than opening statements

3    if that is what you want to do.

4         If you don't want to do opening statements, then we won't.

5    We will quit.

6         I have to apologize, I have never taken this long to get a

7    jury, not ever have we ever gone past lunchtime.

8         But we're going to be back at 8 o'clock in the morning,

9    we're going to go, go, go.  We're going to go hard.

10        But I will pre-instruct.  One or both of you, if you want

11   to make an opening statement you can, if you don't, go home.

12   All right.  Cool.

13            MR. PETERSON:  Thank you.

14            MR. KALOYANIDES:  Thank you.

15            THE COURTROOM DEPUTY:  I'm going to excuse these

16   two?

17            THE COURT:  Excellent.

18        (Sidebar ends.)

19            THE COURTROOM DEPUTY:  Juror 0141, you are excused.

20   Please return to the jury assembly room.

21        Juror 9616, you are excused.  Please return to the jury

22   assembly room.

23        Ladies and gentlemen, would you please stand and raise

24   your right hands.

25        Do you solemnly swear you will well and truly try the

1    cause now before this Court and a true verdict therein render

2    according to the evidence and instructions of the Court, so

3    help you God?

4            JURORS:  I do.

5            THE COURTROOM DEPUTY:  You may be seated.

6            THE COURT:  All right.  Ladies and gentlemen, you

7    are now the jury in this case.  I want to take a few moments to

8    tell you something about your duties as jurors and to give you

9    some preliminary instructions.

10       At the end of the trial, I will give you more detailed and

11   written instructions that will control your deliberations.

12       When you deliberate, it will be your duty to weigh and to

13   evaluate all of the evidence received in the case and in that

14   process to decide the facts.

15       To the facts as you find them, you will apply the law as I

16   give it to you whether you agree with it or not.

17       You must decide the case solely on the evidence and the

18   law before you.

19       Perform these duties fairly and impartially.

20       Do not allow personal likes or dislikes, sympathy,

21   prejudice, fear, or public opinion to influence you.

22       You should also not be influenced by any person's race,

23   color, religion, national ancestry or gender, sexual

24   orientation, profession, occupation, celebrity, economic

25   circumstances or position in life or in the community.

1          This is a criminal case brought by the United States

2     government.

3          The government charges Defendant Gomez with conspiracy to

4     possess with intent to distribute and to distribute

5     methamphetamine in violation of Title 21, United States Code,

6     Section 846 and 841(a)(1), and distribution of methamphetamine

7     in violation of Title 21, United States Code, Section 841(a)(1)

8     and (b)(1) (A)(viii) felon in possession of firearms and

9     ammunition in violation of Title 18, United States Code,

10    Section 922(g)(1), possession of methamphetamine with intent to

11    distribute in violation of Title 21, United States Code

12    Section 841(a)(1), and (b)(1)(C) possession of a firearm in

13    furtherance of a drug trafficking crime in violation of Title

14    18, United States Code, Section 924(c)(1)(A)(i).

15         The charges against the defendant are contained in the

16    first superseding indictment.  The first superseding indictment

17    simply describes the charges the government brings against the

18    defendant.

19         The first superseding indictment is not evidence and does

20    not prove anything.

21         The defendant has pleaded not guilty to the charges and is

22    presumed innocent unless and until the government proves the

23    defendant guilty beyond a reasonable doubt.

24         In addition, the defendant has the right to remain silent

25    and never has to prove innocence or to present any evidence.

1    In order to help you follow the evidence, I will now give

2    you a brief summary of the elements of the crime which the

3    government must prove to make its case.

4    Conspiracy to possess with intent to distribute and to

5    distribute methamphetamine.

6    In order for Defendant Gomez to be found guilty of

7    conspiracy to possess with intent to distribute and to

8    distribute methamphetamine in violation of Sections 846 and

9    841(a)(1), of Title 21 of the United States Code, the United

10    States must prove each of the following beyond a reasonable

11    doubt:

12    First, beginning or about an unknown date and ending on or

13    about January 14, of 2016, there was an agreement between two

14    or more persons to possess with intent to distribute and to

15    distribute methamphetamine.

16    Two, Defendant Gomez joined in the agreement knowing of

17    its purpose and intending to help accomplish that purpose.

18    Distribution of methamphetamine.

19    In order for Defendant Gomez to be found guilty of

20    distribution of methamphetamine in violation of

21    Sections 841(a)(1), and (b)(1) A of Title 21 of the United

22    States Code, the United States must prove each of the following

23    beyond a reasonable doubt.

24    First, Defendant Gomez knowingly distributed

25    methamphetamine.

1           Second, Defendant Gomez knew that it was methamphetamine

2    or some other federally-controlled substance.

3           A felon in possession of firearms and ammunition.

4           In order for Defendant Gomez to be found guilty of being a

5    felon in possession of firearms and ammunition in violation of

6    Section 922(g)(1) of Title 18 of the United States Code, the

7    United States must prove each of the following beyond a

8    reasonable doubt:

9           First, Defendant Gomez knowingly possessed at least one of

10   the firearms or ammunition identified in the first superseding

11   indictment.

12          Second, the firearm or ammunition had been shipped or

13   transported from one state to another or between a foreign

14   nation and the United States.

15          Third, at the time Defendant Gomez possessed the firearm

16   or ammunition, Defendant Gomez had been convicted of a crime

17   punishable by imprisonment for a term exceeding one year.

18          Defendant Gomez stipulates that as of February 17, 2016,

19   and June 16, of 2016, Defendant Gomez had been convicted of a

20   crime punishable by imprisonment for a term exceeding one year.

21          Possession of methamphetamine with intent to distribute.

22          In order for Defendant Gomez to be found guilty of

23   possession with intent to distribute methamphetamine in

24   violation of Sections 841(a)(1) and (b)(1)(C), of Title 21 of

25   the United States Code, the United States must prove each of

1    the following beyond a reasonable doubt:

2         First, Defendant Gomez knowingly possessed

3    methamphetamine.

4         Second, Defendant Gomez possessed it with the intent to

5    distribute it to another person.

6         Possession of a firearm in furtherance of a drug

7    trafficking crime.

8         In order for Defendant Gomez to be found guilty of

9    possession of a firearm in furtherance of a drug trafficking

10   crime, in violation of Section 924(c) of Title 18, the United

11   States must prove each of the following beyond a reasonable

12   doubt:

13        First, Defendant Gomez committed the crime of possession

14   of methamphetamine with intent to distribute as charged in

15   Count 5 of the first superseding indictment, which I instruct

16   you is a drug trafficking crime.

17        Second, Defendant Gomez knowingly possessed a firearm.

18        And third, Defendant Gomez possessed the firearm in

19   furtherance of the crime of possession of methamphetamine with

20   intent to distribute.

21        The evidence you are to consider in deciding what the

22   facts are consists of:

23        One, the sworn testimony of any witness.

24        Two, the exhibits which are received into evidence.

25        And three, any facts to which the parties agree.

1        The following are not evidence and you must not consider

2  them as evidence in deciding the facts of this case:

3        One, statements and arguments of the attorneys.

4        Two, questions and objections of the attorneys.

5        Three, any testimony that I instruct you to disregard.

6        And four, anything you may see or hear when court is not

7  in session even if what you see or hear is done or said by one

8  of the parties or by one of the witnesses.

9        Evidence may be direct or circumstantial.

10        Direct evidence is direct proof of a fact such as

11  testimony by a witness about what that witness personally saw

12  or heard or did.

13        Circumstantial evidence is indirect evidence.  That is it

14  is proof of one or more facts from which one could find another

15  fact.

16        You are to consider both direct and circumstantial

17  evidence.

18        Either can be used to prove any fact.

19        The law makes no distinction between the weight to be

20  given to either direct or circumstantial evidence.

21        It is for you to decide how much weight to give to any

22  evidence.

23        There are Federal Rules of Evidence that control what can

24  be received into evidence.

25        When a lawyer asks a question or offers an exhibit in

1    evidence and a lawyer on the other side thinks that it is not

2    permitted under the Federal Rules of Evidence, that lawyer may

3    object.

4         If I overrule the objection, the question may be answered

5    or the exhibit received.

6         If I sustain the objection, the question cannot be

7    answered or the exhibit cannot be received.

8         Whenever I sustain an objection to a question, you must

9    ignore the question and must not guess what the answer would

10   have been.

11        Sometimes I may order that evidence be stricken from the

12   record and you disregard or ignore the evidence.  That means

13   that when you are deciding the case, you must not consider the

14   evidence that I told you to disregard.

15        In deciding the facts in this case, you may have to decide

16   which testimony to believe and which testimony not to believe.

17        You may believe everything a witness says or part of it or

18   none of it.

19        In considering the testimony of any witness, you may take

20   into account:

21        One, the witnesses' opportunity and ability to see or hear

22   or know the things testified to.

23        Second, the witnesses' memory.

24        Third, the witnesses' manner while testifying.

25        Fourth, the witnesses' interest in the outcome of the

1    case, if any.

2         Fifth, the witnesses' bias or prejudice, if any.

3         Sixth, whether other evidence contradicted the witnesses'

4    testimony.

5         Seven, the reasonableness of the witnesses' testimony in

6    light of all of the evidence.

7         And eight, any factors that bear on believability.  The

8    weight of the evidence as to a fact does not necessarily depend

9    on the number of witnesses who testify about it.

10        I will now say a few words about your conduct as jurors.

11        First, keep an open mind throughout the trial and do not

12   decide what the verdict should be until you and your fellow

13   jurors have completed your deliberations at the end of the

14   case.

15        Second, because you must decide this case based only on

16   the evidence received in the case and on my instructions as to

17   the law that applies, you must not be exposed to any other

18   information about the case or to the issues it involves during

19   the course of your jury duty.

20        Thus, until the end of the case or unless I tell you

21   otherwise, do not communicate with anyone in any way and do not

22   let anyone else communicate with you in any way about the

23   merits of the case or anything to do with it.

24        This includes discussing the case in person, in writing,

25   by phone, or electronic means via e-mail, via text messaging,

1  or any Internet chat room, blog, website, or application

2  including but not limited to Facebook, YouTube, Twitter,

3  Instagram, LinkedIn, SnapChat or any other forms of social

4  media.

5      This applies to communicating with your fellow jurors

6  until I give you the case for deliberation, and it applies to

7  communicating with everyone else, including your family

8  members, your employer, the media, and the people involved in

9  the trial, although, you may notify your family and employer

10  you have been seated as a juror in the case and how long you

11  expect the trial to last.

12      But if you are asked or approached in any way about your

13  jury service or anything about this case, you must respond that

14  you have been ordered not to discuss the matter and to report

15  the contact to the Court.

16      Because you will receive all of the evidence and legal

17  instruction you properly may consider to return a verdict, do

18  not read, watch, or listen to any news accounts or commentary

19  about the case or anything to do with it, although I have no

20  information that there will be news reports about this case.

21      Do not do any research, such as consulting dictionaries,

22  searching the Internet or using other reference materials, and

23  do not make any investigation or in any other way try to learn

24  about the case on your own.

25      Do not visit or view any place discussed in this case and

1      do not use Internet programs or other devices to search for or

2      view any place discussed during the trial.

3           Also, do not do any research about this case, the law, or

4      the people involved including the parties, the witnesses, or

5      the lawyers until you have been excused as jurors.

6           If you happen to read or hear anything touching on this

7      case in the media, turn away and report it to me as soon as

8      possible.

9           These rules protect each parties' right to have this case

10     decided only on evidence that has been presented here in court.

11          Witnesses here in court take an oath to tell the truth and

12     the accuracy of their testimony is tested through the trial

13     process.

14          If you do any research or investigation outside the

15     courtroom or gain any information through improper

16     communications, then your verdict may be influenced by

17     inaccurate, incomplete, or misleading information that has not

18     been tested by the trial process.

19          Each of the parties is entitled to a fair trial by an

20     impartial jury, and if you decide the case based on information

21     not presented here in court, you will have denied the parties a

22     fair trial.

23          Remember, you have taken an oath to follow the rules and

24     it is very important you follow these rules.

25          A juror who violates these restrictions jeopardizes the

1    fairness of these proceedings, and a mistrial could result that

2    would require the entire trial process to start over.

3         If any juror is exposed to any outside information, please

4    notify the Court immediately.

5         At the end of the trial, you will have to make your

6    decision based upon what you recall of the evidence.

7         You will not have a written transcript of the trial, and I

8    urge you to pay close attention to the testimony as it is

9    given.

10        If you wish, you may take notes to help you remember the

11   evidence.  If you do take notes, please keep them to yourself

12   until you and your fellow jurors go to the jury room to decide

13   the case.

14        Do not let note-taking distract you from being attentive.

15        When you leave court for recesses, your notes should be

16   left in the courtroom.  No one will read your notes.

17        Whether or not you take notes, you should rely on your own

18   memory of the evidence.  Notes are only to assist your memory.

19        You should not be overly influenced by your notes or those

20   of your fellow jurors.

21        All right.  Ladies and gentlemen, the next phase of the

22   trial will begin.  That will consist of opening statements by

23   the attorneys as to what they believe the evidence will show,

24   but we are not going to do that now.

25        We're going to break for the evening, and when we

1    re-adjourn tomorrow morning at 8:00 a.m., we will begin with

2    the opening statements of the lawyers, followed by the

3    presentation of evidence.

4        I will tell you this again, but cases follow a fairly

5    standard format.

6        The government or the plaintiff in civil cases begins the

7    case with the presentation of its evidence through witnesses

8    who are then permitted to be cross-examined by the defense.

9        And that process continues until the government has

10   exhausted all of its witnesses.

11       Then, the defense has the option, but no obligation -- the

12   option to put on a case through the presentation of its

13   witnesses, and if they elect to put on a case, then the

14   government has the right to cross-examine.

15       After that process is completed, I will instruct you on

16   the law, and the case will be given to you for your decision.

17       Now, remember the admonition.  Do not talk to anyone about

18   this case until we give up the case for your decision.

19       We will see you 8:00 a.m.  All right.

20            THE COURTROOM DEPUTY:  All rise.

21            (JURY EXITS THE COURTROOM AT 4:22 P.M.)

22            THE COURT:  Any questions we need to talk about?

23            MR. KALOYANIDES:  Not from the defense, thank you.

24            MR. PETERSON:  No, Your Honor.  Thank you.

25            THE COURT:  Have a pleasant evening.

1          MR. KALOYANIDES:  Thank you, you too.

2          MS. LEE:  Thank you, Your Honor.

3          (The proceedings were concluded at 4:25 p.m.)

4                         * * *

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

1                **CERTIFICATE OF OFFICIAL REPORTER**

2

3    COUNTY OF LOS ANGELES   )
                             )
4    STATE OF CALIFORNIA     )

5

6            I, TERRI A. HOURIGAN, Federal Official Realtime

7    Court Reporter, in and for the United States District Court for

8    the Central District of California, do hereby certify that

9    pursuant to Section 753, Title 28, United States Code that the

10   foregoing is a true and correct transcript of the

11   stenographically reported proceedings held in the

12   above-entitled matter and that the transcript page format is in

13   conformance with the regulations of the judicial conference of

14   the United States.

15

16   Date:  June 11, 2019

17

18

19                        /s/ TERRI A. HOURIGAN
                 _____
20                 TERRI A. HOURIGAN, CSR NO. 3838, CCRR
                      Federal Official Court Reporter
21

22

23

24

25

**UNITED STATES DISTRICT COURT**