1       **UNITED STATES DISTRICT COURT**

2          **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3           **HONORABLE OTIS D. WRIGHT II, U.S. DISTRICT JUDGE**

4

5    **UNITED STATES OF AMERICA,**

6                **Plaintiff,**

7        **vs.                        Case No. CR 16-401-ODW**

8    **JULIO CESAR GOMEZ, and STEPHEN ANDREW**
     **GONZALEZ,**

9
                  **Defendants.**
10    _____/

11

12

13                    **REPORTER'S TRANSCRIPT OF**
                         **MOTION HEARING**
                      **MONDAY, MAY 21, 2018**
14                         **9:00 A.M.**
                     **LOS ANGELES, CALIFORNIA**
15

16

17

18

19

20

21

22

23    _____

24            **TERRI A. HOURIGAN, CSR NO. 3838, CCRR**
                **FEDERAL OFFICIAL COURT REPORTER**
              **350 WEST FIRST STREET, ROOM 4311**
25            **LOS ANGELES, CALIFORNIA  90012**
                      **(213) 894-2849**

1                    **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFF:**

4        NICOLA T. HANNA
         United States Attorney
5        BY:  SEAN D. PETERSON
             Assistant United States Attorney
6        United States Courthouse
         312 North Spring Street
7        Los Angeles, California  90012

8

9    **FOR THE DEFENDANT:  JULIO CESAR GOMEZ**

10       KAYE MCLANE BEDNARSKI and LITT, LLP
         BY:  DAVID S. MCLANE
11       Attorney at Law
         975 East Green Street
12       Pasadena, California  91106
         dmclane@kmbllaw.com
13

14
     **FOR THE DEFENDANT:  STEVEN ANDREW GONZALEZ**
15
         ANTHONY M. SOLIS APLC
16       BY:  ANTHONY M. SOLIS
         Attorney at Law
17       23679 Calabasas Road, Suite 412
         Calabasas, California  91302
18       anthonysolislaw@gmail.com

19       ALSO PRESENT:

20       DAVID R. REED LAW OFFICES
         BY:  DAVID R. REED
21       3699 Wilshire Boulevard, Suite 850
         Los Angeles, California  90010
22       automatictrials@yahoo.com

23       ANGEL ALEJANDRO CARMONA, DEFENDANT

24

25


                    **UNITED STATES DISTRICT COURT**

```
 1              LOS ANGELES, CALIFORNIA; MONDAY MAY 21, 2018

 2                              9:00 A.M.

 3                              --oOo--

 4

 5              THE COURTROOM DEPUTY:  Calling Item No. 1,

 6      CR 16-401, United States of America versus Julio Cesar Gomez

 7      and Steven Andrew Gonzalez.

 8          Counsel, may I have your appearance, please?

 9              MR. PETERSON:  Good morning, Your Honor.  Sean

10      Peterson on behalf of the United States.

11              THE COURT:  Good morning, Mr. Peterson.

12              MR. MCLANE:  Good morning, Your Honor.  Dave McLane

13      appearing on behalf of Julio Cesar Gomez.

14              THE COURT:  Good morning.

15              MR. SOLIS:  Good morning, Your Honor.  Anthony Solis

16      on behalf of Steven Andrew Gonzalez.  He is present and is in

17      custody.

18              THE COURT:  Good morning, Mr. Solis, and good

19      morning, Mr. Gonzalez.

20              MR. REED:  Good morning, Your Honor.  David Reed, I

21      represent the witness, Angel Carmona.  He is present in court.

22              THE COURT:  Good morning, Mr. Reed.

23          Gentleman, we have got -- well, actually we have got too

24      much to handle in the time allotted.

25          And therefore, I am glad that we are going to defer the
```

hearing on the motion to dismiss due to the government's bad

faith destruction of evidence.

    I have seen the attorneys discussing, at least -- I don't

know what date you have agreed upon?

09:22AM       THE COURTROOM DEPUTY:  May 30th at 1:30.

        THE COURT:  All right.  Fine.  If Ms. English says

it's fine, it's fine.

    All right.  Let's try to go through some of the others as

quickly as we can.

09:22AM   Does anyone have a particular preference in terms of how

to proceed, like the motions in limine as quickly as we can go

through them?

        MR. SOLIS:  I don't think we have a preference, Your

Honor.  If you want to just go through, we can discuss them one

09:22AM   after the other.

        MR. PETERSON:  Your Honor, may I say one thing?

    With the declaration that was submitted with the reply to

the motion to dismiss on Friday, I think that the defense -- I

think both defendants -- but particularly Defendant Gomez has

09:23AM   put at play the possibility of an entrapment defense.

    At least, my understanding of the legal analysis I think

that could also very much affect issues such as what past

convictions would come in for impeachment purposes.

    I think it changes the analysis, also, the 404(b) type

09:23AM   issues.

1    So, I just wanted to say that up front to the extent that

2  we can then build that into the discussion of the pending

3  motions as well.

4         THE COURT:  All right.  We have also got witnesses

09:23AM 5  here.

6    I want to say both of them are out of state, but Indio

7  isn't quite out of state, but almost.

8    I don't want people to have made a trip here for nothing.

9    If there is testimony we need from these individuals, then

09:24AM 10  I think, certainly as a courtesy and consideration to them, we

11  probably should get that testimony.

12    Even if that testimony goes to the motion to dismiss, so

13  that people don't have to come back.

14    And then we have got Mr. Carmona here.  I would also like

09:24AM 15  to deal with whatever it is he's got to offer so that he can go

16  back to his residence and not be brought out again.

17    All right.  Now, not clearly knowing how you all intend to

18  use these individuals, I will leave it to you, but let's get

19  these people's testimony on the record so we can release them,

09:24AM 20  okay?

21         MR. PETERSON:  Your Honor, as I understand it all of

22  the witnesses are here today for the motion to dismiss.

23         THE COURT:  All right.

24         MR. PETERSON:  So --

09:25AM 25         THE COURT:  Okay.

**UNITED STATES DISTRICT COURT**

| | |
|---|---|
| | 1 |
| | 2 |
| | 3 |
| | 4 |
| 09:25AM | 5 |

```
 1          MR. PETERSON:  Agent Woolley and Investigator Monis
 2   were co-case agents on the investigation as it developed into
 3   the charges that were filed in this case.
 4          THE COURT:  Okay.
 5          MR. PETERSON:  You know, it was my preference to
 6   present testimony from both of them in the opposition.
 7      That being said, I think that it can be done with only
 8   Investigator Monis, and --
 9          THE COURT:  That's all right.
10      Let's do it.  Let's get as much testimony as we can and
11   let's keep it abbreviated.
12      I just wanted to have the gist of the -- No. 1, I need the
13   circumstances of the exchange and then I need to know what
14   evidence we have of not only the bad faith destruction of
15   evidence, but what effect that will have on the defense.
16      Okay.  I guess the most logical thing then is to hear the
17   government's version of exactly how that went down, okay?
18          MR. PETERSON:  Okay, Your Honor.  So, I'm sorry, I'm
19   just trying to manage this with what I understand of the time
20   that is available.
21      I think if both Agent Woolley and Investigator Monis were
22   to testify and be available for cross, as I imagine, I think
23   that would take more than an hour.  I think at this point we
24   have less than an hour.
25      I think maybe I could put Agent Woolley up for a short
```

09:25AM (line 10)
09:26AM (line 15)
09:26AM (line 20)
09:26AM (line 25)

period of time and do less than what I had originally planned

with him.

        THE COURT:  Tell you what, why don't you give me an

abbreviated opening statement.

Give me an overview of what you think these gentleman

would testify to, and if I think that it needs fleshing out a

bit, we will put one or both of these gentleman on the stand

for the limited purpose of.

        MR. PETERSON:  Thank you.  So, I guess to begin with

my understanding of the defense motion to dismiss it's based on

two different legal concepts.

One concept is spoliation of evidence, and the other

concept is outrageous government conduct.

As I understand the defense theory, there is some

overlapping in the factual basis for that.

I understand that with regards to the spoliation of

evidence, the defense argument is essentially along the lines

that investigators should have maintained a GPS tracker on one

of the confidential informants, known as CI-5 that was used in

the investigation in this case.

And not only that, but that where a GPS tracker was used,

that the -- the actual tracking information should have been

retained.

        THE COURT:  From my understanding, it was the

tracking device that was placed upon CI-5's vehicle, correct?

1          MR. PETERSON:  That is right, Your Honor.

2          THE COURT:  The only capability of this tracker was

3    to record the location of that vehicle?

4          MR. PETERSON:  Yes, to -- in real time signal, send

09:28AM  5    out a signal with the GPS tracking information.

6          THE COURT:  All right.

7          MR. PETERSON:  So it was used in some of the

8    operations in this case.  And the -- well, I proffer what is in

9    Agent Monis's declaration, that the reason why it was used was

09:28AM  10   so that the investigators who were performing surveillance of

11   the operation could continue to track the informants, primarily

12   I think for safety purposes, in case when the informants were

13   driving, their vehicle got out of sight of the following

14   investigators who were performing surveillance.

09:29AM  15         THE COURT:  All right.  I want to make sure I

16   understand, because according to Mr. Gomez, that tracking

17   device would also apparently record conduct?

18         MR. PETERSON:  No, Your Honor.

19         THE COURT:  That's what I need to know.  Thank you.

09:29AM  20         MR. PETERSON:  Your Honor, should I address any

21   others?

22         THE COURT:  Tell me about this:  The tracking device

23   also provides a record of all of the locations that that object

24   to which the tracking device had been attached.

09:29AM  25        It will keep a record of all of the locations of that

**UNITED STATES DISTRICT COURT**

particular device has visited, correct?

MR. PETERSON:  So in this particular case, the type of GPS tracking that was used was provided by a third-party service to the Riverside County District Attorneys Investigation Unit, and at the time it was being used the agents did not receive any kind of permanent record.

It was just a live transmission in real time that could be tracked on a cellular telephone or some type of digital device.

THE COURT:  So you say a third-party vendor was used in order to provide the tracking -- the technology?

MR. PETERSON:  Yes.

THE COURT:  All right.  And that the local law enforcement agency did not concurrently receive from the third party a printout?

MR. PETERSON:  A permanent record.

THE COURT:  Now, then the question is did the local law enforcement instruct this third-party vendor to destroy the historical data?

MR. PETERSON:  It did not instruct the third-party vendor to destroy the historical data.

What happened is that in this case, eventually either Investigator Monis or one of his colleagues went to the third-party provider of the GPS tracking service and asked, can I get the records for this particular tracker for this particular time period, to paraphrase, as I understand it.

1              And the response was no, because they were destroyed

2     within a certain period of time --

3                   THE COURT:  Oh.

4                   MR. PETERSON:  -- by the third-party provider.

09:31AM    5                   THE COURT:  So there is no involvement by the

6     government in the destruction of this information?

7                   MR. PETERSON:  No, Your Honor.

8                   THE COURT:  Okay.  Thank you.

9                   MR. PETERSON:  Thank you, Your Honor.

09:31AM   10                   THE COURT:  And Mr. Gomez's position is?

11                   MR. MCLANE:  Well, Your Honor, we filed a reply on

12    Friday.  We expanded the grounds for the outrageous

13    governmental misconduct.

14                   THE COURT:  All right.  So we're going to leave this

09:32AM   15    alone.

16                   MR. MCLANE:  Well, it's part of it, I would just

17    comment --

18                   THE COURT:  Stop.

19                   MR. MCLANE:  Sorry, Your Honor.

09:32AM   20                   THE COURT:  While we have individuals here who can

21    offer testimony, I want to know whether or not we are backing

22    away from the allegation that the government, in bad faith,

23    destroyed evidence.

24                   MR. MCLANE:  Yes, Your Honor, on that issue, on the

09:32AM   25    GPS, yes.

1          THE COURT:  Fine.  Does that mean these people can

2    leave?

3          MR. MCLANE:  No, Your Honor, because Agent Monis is

4    needed for the grounds we filed on Friday.

09:32AM   5          THE COURT:  We're going to go now into the

6    entrapment?

7          MR. MCLANE:  Outrageous governmental misconduct

8    based on entrapment.

9      If I can just give the highlights of it to the Court so

09:32AM   10   the Court understands what we're talking about.

11          THE COURT:  Go ahead.

12          MR. MCLANE:  Okay.  What the Court has to understand

13   is that June 2nd, 2015, CI-005 had pending charges for very

14   serious charges including child endangerment, drugs, guns, all

09:33AM   15   sorts of conduct.  He had two strike priors.  He was facing 58

16   years, eight months to life.

17      On August 21st, Your Honor, 2015, Agent Monas signed up

18   Informant-005 to be a confidential informant, and what we

19   contend, Your Honor --

09:33AM   20          THE COURT:  Just a question, what jurisdiction were

21   these charges pending out of?

22          MR. MCLANE:  Riverside County Superior Court, Your

23   Honor.

24          THE COURT:  Thank you.

09:33AM   25          MR. MCLANE:  And Agent Monas and the informant

entered into a deal, basically a quota, Your Honor.

And the deal was this, basically, the CI, if he made ten cases leading to the arrest of ten individuals, then he was promised he would get probation and a suspended sentence of 20 years.

If he did not make those ten cases leading to the arrests of ten individuals, he would automatically get 58 years and eight months, minimum.

Your Honor, that created a high incentive for this informant to make cases any which way he could against any individual because of the nature of the contract.

I have never seen a contract like this.  It was so coercive and created such an incentive for the informant, because he was looking at the one hand -- if I don't make these ten cases, I'm going to do 58 years in jail, basically the rest of my life.

If I do make these cases, I can get probation.

So what happened --

THE COURT:  You said contract?

MR. MCLANE:  Yes.

THE COURT:  Because in order for there to be a guarantee regarding a sentence --

MR. MCLANE:  Yes.

THE COURT:  -- part of that contract must be the Court.

|  | 1 | MR. MCLANE:  Well, Your Honor, I don't know what |
|--|---|--|

1    MR. MCLANE:  Well, Your Honor, I don't know what

2    happens in Riverside County, but this is a contract between the

3    DA's Office, CI-005, and Agent Monis.

4        And we have the contract, we have submitted it to the

09:35AM  5    Court on Friday.  That is why the Court needs to read our

6    papers, and I apologize for filing them so late, because we

7    didn't have the basis for filing this motion until after we

8    spoke to Mr. Carmona.

9        THE COURT:  Did this contract indicate that the DA

09:35AM  10    would make a recommendation to the Court?

11        MR. MCLANE:  Well, it promised.

12        THE COURT:  No, no, no, no.  I find this incredible.

13        The contract promised a particular sentence?

14        MR. MCLANE:  Yes.  I can show the Court the

09:36AM  15    contract.

16        If I may approach?  If I may approach, so the Court can

17    see the contract?

18        It's this page, Your Honor.

19        THE COURT:  It says the District Attorney will

09:37AM  20    recommend to the Court that the defendant be placed on 5 years

21    formal probation with 20 years of state prison suspended.

22        I asked you whether or not it was a recommendation.  Can I

23    believe anything you tell me?

24        MR. MCLANE:  Yes, Your Honor, turn to page 356 of

09:37AM  25    that document at the bottom of the Bates stamp.

**UNITED STATES DISTRICT COURT**

```
 1        This is what it says by the District Attorney:
 2   Paragraph 2, Your Honor, it's the Bates stamp by the government
 3   protected government 00356.
 4             THE COURT:  356, all right.
 5             MR. MCLANE:  What that says, Your Honor, is if the
 6   defendant fails to complete all terms of this contract required
 7   time set or terms set within, then the contract is null and
 8   void and defendant shall be sentenced to state prison per the
 9   terms referenced above and the contract was signed by the
10   defendant on August 21st, 2015.
11        So that's saying, Your Honor, that if he doesn't perform
12   under the contract, he will get 58 years.
13             THE COURT:  There is an immediately preceding entry,
14   once again, affirms that the DA will simply make a
15   recommendation to the Court regarding sentencing.
16        So, I just wanted to make sure that over there in the
17   Republic of Riverside, it operates the same way.  The judges
18   impose sentences, not prosecutors.
19             MR. MCLANE:  Your Honor, he has got two strikes.  It
20   would be --
21             THE COURT:  Whatever he has got, the Court isn't a
22   party to this contract.
23             MR. MCLANE:  I understand that, Your Honor.
24             THE COURT:  I just want to make sure.
25             MR. MCLANE:  Okay.  But what is clear from the
```

09:38AM (lines 5)
09:38AM (line 10)
09:38AM (line 15)
09:38AM (line 20)
09:39AM (line 25)

1    contract, Your Honor, is if he doesn't perform and make -- set

2    up ten individuals, which leads to ten arrests --

3              THE COURT:  The recommendation is off.  It's off the

4    table.

09:39AM    5              MR. MCLANE:  And he will get 58 years, that is the

6    coercion, Your Honor.  The recommendation is probation.  If he

7    doesn't perform under the contract, he shall get 58 years.

8              THE COURT:  Well, I don't know about that.

9              MR. MCLANE:  Well, that is what the contract says,

09:39AM   10    Your Honor, on paragraph 2.

11              THE COURT:  I want to pretend that -- I'm going to

12    pretend that the superior court out there is going to sentence

13    in accordance to the law, not whatever this piece of paper is,

14    all right.  I'm just going to pretend.

09:39AM   15              MR. MCLANE:  Well, it's a strike, he is facing two

16    strikes.  It's a mandatory sentence, and the only way he would

17    get out of it would be if the DA dismisses the strikes, so he

18    was eligible for probation.

19              THE COURT:  So he had to do something in order to

09:40AM   20    get the DA to perform?

21              MR. MCLANE:  He had to set up ten individuals, which

22    led to ten arrests, basically a quota.

23              THE COURT:  Set up?

24              MR. MCLANE:  Well, Your Honor he had to

09:40AM   25    participate --

1         THE COURT:  Provide information leading to the

2    arrest and conviction of.

3         MR. MCLANE:  Actually the contract requires him to

4    wear recording devices, engage in monitored meetings and

09:40AM    5    transactions.

6         THE COURT:  Okay.

7         MR. MCLANE:  So it's not just providing information.

8    He has to go out there and meet ten potential drug dealers

9    providing guns or drugs, and what he does, the performance is

09:40AM   10    to get those guns or drugs which leads to the arrests of ten

11    people.

12         THE COURT:  But he's wearing a wire, he's wearing a

13    wire.

14         MR. MCLANE:  He's wearing a wire.

09:40AM   15         THE COURT:  So the conversations which take place

16    between this individual and whoever, you know, the potential

17    suspects are, the conversation, the verbiage back and forth is

18    going to have to support an arrest and a charge for engaging in

19    whatever this activity is.

09:41AM   20      He can't just simply -- he doesn't have the power to

21    simply arbitrarily pick someone and have them prosecuted just

22    on his say-so.

23         MR. MCLANE:  I agree, Your Honor.  But he's only

24    monitored on particular occasions.

09:41AM   25      He's not monitored on all of the other occasions when he

1    is free to go out and have conversations and meetings with

2    individuals, which is what happened in this case.

3                    THE COURT:  All right.

4                    MR. MCLANE:  In fact, the GPS monitoring and other

09:41AM  5    types of monitoring should have been essential for this

6    high-risk informant facing 58 mandatory years in jail.

7                    THE COURT:  Are you saying that this -- uncontrolled

8    contact formed the basis of the arrest of your client?

9                    MR. MCLANE:  Yes, Your Honor, on January 13th.

09:42AM  10                    THE COURT:  Okay.

11                    MR. MCLANE:  I realize, Your Honor, that is why this

12   motion to dismiss and this argument should occur on May 30th,

13   so the Court would have a chance to read the papers I filed on

14   Friday.

09:42AM  15                    THE COURT:  Good point.

16           My only concern right now is we have got people who have

17   been brought here specifically for the hearing on that motion.

18           And rather than have them come back, I would like to hear

19   from them as is necessary.

09:42AM  20           So, is there something you would like from these two

21   gentleman from law enforcement?

22                    MR. MCLANE:  I'm totally prepared.  We could have

23   the government cross-examine Mr. Carmona.

24           I'm prepared to cross-examine Agent Monas on the

09:42AM  25   allegations we put in our paperwork.

```
 1        I did tell the government since we filed this additional
 2   ground on Friday, if they wanted an opportunity to prepare that
 3   we could do it on the date we agreed, which was I believe May
 4   30th.
 5        This is going to take some time to do this
 6   cross-examination, Your Honor.
 7             THE COURT:  All right.
 8             MR. MCLANE:  It's going to take a couple of hours.
 9   That's why -- and I would ask that the Court read our papers
10   before evaluating what we're alleging here, because, Your
11   Honor, we're not trying to hoodwink the Court or the government
12   or anything.
13        When we filed the original motion to dismiss for the
14   destruction of GPS, my understanding from the reports was that
15   there was constant GPS monitoring.
16        When the government made clear in its opposition that they
17   only did the GPS monitoring on three times, then, Your Honor, I
18   didn't think that was necessarily a good ground.  That's why I
19   withdrew that.
20        But a stronger ground is what happened when evaluating the
21   evidence and talking to Mr. Carmona about basically the day
22   before the transaction, and it is in his declaration, we
23   submitted to the Court, CI-005 in an unmonitored meeting went
24   over to the house of Mr. Gonzalez and he was smoking
25   methamphetamine with Mr. Carmona and Mr. Gonzalez, and at that
```

09:43AM (line 5)
09:43AM (line 10)
09:43AM (line 15)
09:43AM (line 20)
09:44AM (line 25)

1   meeting he gave the drugs to my client, that my client

2   delivered to the other informant the following day.

3       And when he gave him those drugs on January 13th, he told

4   Mr. Gomez not to give him any money the next day.

09:44AM   5       Okay, because it was clear that the informant didn't want

6   the second informant or the government who was monitoring that

7   meeting on that day to know that the drugs were actually coming

8   from this Informant-005, and that, to me, is outrageous

9   governmental misconduct.

09:44AM   10      He was supplying the drugs, not Mr. Gomez, not

11  Mr. Gonzalez.  The government's theory in this case is that

12  Mr. Gomez and Mr. Gonzalez supplied the drugs for the

13  transaction.

14          THE COURT:  Okay.  So 005 gives these drugs to

09:45AM   15  Mr. Carmona?

16          MR. MCLANE:  Mr. Gomez, Your Honor.

17          THE COURT:  Gave it to Mr. Gomez, and Mr. Carmona

18  simply witnessed it?

19          MR. MCLANE:  Yes.

09:45AM   20          THE COURT:  Did money change hands at that time?

21          MR. MCLANE:  No, Your Honor.

22          THE COURT:  Drugs were given and no money changed

23  hands?

24          MR. MCLANE:  Because CI-489 was going to pay the

09:45AM   25  money the following day on January 14th.

|   | |
|---|---|
| 1 | THE COURT:  Knowing it was going to be monitored? |
| 2 | MR. MCLANE:  Yes, Your Honor. |
| 3 | THE COURT:  Why would they do that? |
| 4 | MR. MCLANE:  CI-489 didn't know what was going on. |

09:45AM  5   What was going on is that CI-0005 was double-dipping.

6        THE COURT:  Wait, wait, back up.  Does Mr. Gomez

7   know what is going to happen tomorrow, the next day?

8        MR. MCLANE:  He knows there is going to be -- that

9   he's going to give the drugs to the second informant the next

09:46AM  10  day.

11       Of course, Mr. Gomez and Mr. Gonzalez, they don't know

12  that either CI-005 or 489 are informants.

13       But what 005 is doing, Your Honor, is setting up both

14  Gomez and Gonzalez with the drug transaction, not telling the

09:46AM  15  government, not telling 489, that he's the actual source of the

16  drugs the following day, and that is outrageous governmental

17  misconduct for an informant to:  One, smoke methamphetamine;

18  two, to possess drugs; three, to supply the drugs in a drug

19  transaction.

09:46AM  20       Now, we laid that out in our papers we filed on Friday.

21       I would ask the Court that we defer hearing on this motion

22  so the Court has an opportunity to fully understand where we're

23  going, so when I do the cross-examination of Agent Monas, it

24  will make sense to the Court.

09:47AM  25       Right now, it doesn't make sense because the Court was

1    focused on the destruction of evidence.

2        But this is a stronger ground.

3        It's kind of like -- it's kind of like a stash house, Your

4    Honor, that the government makes the stash house, provides the

09:47AM   5    opportunity for the crime, the person comes in, you know, robs

6    the stash house that the government set up.

7        This informant provided the opportunity and supplied the

8    drugs.

9        I have never heard of a case like this, Your Honor, where

09:47AM   10   the informant is supplying the drugs.  And why is he doing

11   that?  Because he has such an incentive to make cases while

12   he's out there.

13       THE COURT:  I have to indicate, Mr. McLane, you know

14   your audience.  It was like the magic words, wasn't it, "stash

09:47AM   15   house."

16       Okay.  Listen, why is Mr. Carmona here?

17       MR. MCLANE:  Mr. Carmona is the one who provides the

18   corroboration that CI-005 supplied the drugs to Mr. Gomez the

19   day before.

09:48AM   20       He's an independent witness.

21       He has no reason to lie or anything.  He's been sentenced.

22   He is serving a ten-year sentence.  He gets no benefit out of

23   it.

24       His conviction was affirmed by the Ninth Circuit last

09:48AM   25   week.  He's going to be doing his time.

**UNITED STATES DISTRICT COURT**

 1          He's here because if you heard this just from my client or

 2   Mr. Gonzalez, the Court would say there is a bias.

 3          But with Mr. Carmona of his own free will, he's coming

 4   here to tell the Court exactly what happened.

09:48AM  5          And when I found out what he was saying what happened,

 6   that is when I filed the declaration.  I supplied it to the

 7   government last Thursday, and I filed my papers.

 8          To me, Your Honor, this is -- I have never seen a case

 9   like this where the informant is doing his own drug deal

09:48AM 10   basically.

11          And he tells my client, don't give me the money.  Why

12   doesn't he want to get the money?  Then the second informant

13   and the government would know that he was the source of the

14   drugs.  He doesn't want the government to know.  He doesn't

09:48AM 15   want the second informant to know.

16              THE COURT:  You lost me here.  If CI-5 gets paid the

17   day before the monitored transaction, how would that then

18   signal to anyone that --

19              MR. MCLANE:  He didn't get paid.

09:49AM 20              THE COURT:  No, no, no.  But if he had gotten paid,

21   how would that signal to anyone his involvement?

22              MR. MCLANE:  Well, if he got paid when -- during the

23   monitored transaction for the drugs, it would signal to the

24   government -- it would signal to the other informant that he

09:49AM 25   was the source of the drugs.

**UNITED STATES DISTRICT COURT**

1           THE COURT:  How?

2           MR. MCLANE:  Because he's getting paid for the

3    drugs.

4       Why would my client -- if my client or Mr. Gonzalez were

5    the source of the drugs, they would keep the money for the

6    drugs.

7       Instead, Mr. -- instead the informant tells Mr. Gomez the

8    day before, don't pay me the next day.  You can pay me later.

9       That is what he said.  Why?

10      Because he was the source of the drugs, Your Honor.  And

11   my client would have owed him for the drugs.

12          THE COURT:  I'm still lost here.

13          MR. MCLANE:  That's why I would ask the Court to --

14          THE COURT:  Wait a minute, no, no.

15      Wait a minute, Mr. Reed supplies you with some drugs that

16   you intend to sell to me tomorrow, all right.

17      Mr. Reed provides you with drugs, you pay Mr. Reed.

18      Tomorrow you and I meet.  You sell me the drugs, I pay

19   you.

20      Do I ask where you got them, where you got the drugs?

21      No.

22      Do you volunteer where you got the drugs?

23      No.

24      How is it that Mr. Reed is going to be implicated merely

25   because you paid him for some merchandise?

```
 1              MR. MCLANE:  He didn't pay him the day before.

 2              THE COURT:  See this is what is not making sense to

 3    me.  It doesn't make sense to me at all that no money changes

 4    hands the day before, because that would signal to the

 5    government and everyone else that CI-005 was involved.

 6         I don't see how.

 7         And explain to me in the example I just gave you, explain

 8    to me how if you paid Mr. Reed for drugs that he gives you that

 9    you are going to sell to me tomorrow, that if he pays you, that

10    somehow that act will signal to the whole world his

11    involvement?  Explain that.

12              MR. MCLANE:  Okay, Your Honor.  Mr. Gomez did not

13    pay CI-005 the day before.

14              THE COURT:  Right.

15              MR. MCLANE:  What CI-005 tells him is, don't pay me

16    tomorrow, you can pay up later, okay.

17         That is what he says the day before.

18         Why?  Because he's worried that it would signal if

19    Mr. Gomez gave him the money the following day after Mr. Gomez

20    gives the drugs to the second informant, that it would signal

21    to the second informant -- it would signal to the government

22    that actually it wasn't Mr. Gonzalez, it wasn't Mr. Gomez that

23    were the source of the drugs, that it was CI-005 was the source

24    of drugs --

25              THE COURT:  How?
```

1          MR. MCLANE:  -- which would violate --

2          THE COURT:  How?

3          MR. MCLANE:  Well, Your Honor, I don't know how much

4    more I can explain, but to me it makes sense that -- I think

09:52AM   5    the Court should read the papers.

6          What you have to know, Your Honor, and you should read the

7    declaration of Mr. Carmona, and I think if you read that

8    declaration, it would make sense to you.

9          THE COURT:  Okay.

09:52AM   10         MR. MCLANE:  Read that declaration, and I apologize

11   to the Court.  This is all laid out on Friday.  The Court was

12   focused on the GPS, and, you know, that is why I said to the

13   government and everyone that we should have this hearing on a

14   separate day so the Court could have a little time to look at

09:52AM   15   my papers and see if it makes sense.

16         If the Court just continues this, we can deal with the

17   other motions today, the other motions in limine.

18         If the Court continues this to May 30th, then my

19   cross-examination of Agent Monas would make sense as to what I

09:53AM   20   would do in that cross-examination, but the Court really needs

21   to see the paperwork.

22         THE COURT:  All right.

23         MR. MCLANE:  That's what I would ask Your Honor to

24   do.

09:53AM   25         THE COURT:  Okay.  Done.

1           MR. MCLANE:  Thank you.

2           THE COURT:  Well, it looks like we're not going to

3   be able to make any headway.

4       All of the witnesses apparently are going to come back on

5   the 30th; is that the day that has been selected?

6           MR. MCLANE:  Yes, Your Honor.

7           THE COURT:  In the afternoon?

8           MR. MCLANE:  Afternoon, at 1:30.

9           THE COURT:  Okay.  It will probably go into the

10  evening.

11          MR. PETERSON:  If I may say one thing regarding the

12  witness for everyone here also for the record.

13      So I have spoke with defense counsel about the fact that

14  today two co-case agents during the investigation were

15  available.  Both Investigator Monas, and Special Agent Woolley.

16      And just in light of the logistical concerns, in part

17  because Agent Woolley is coming out of a non-local office now,

18  and he flew here to be here today, but also because he's really

19  not the focus of the current defense attention, as I understand

20  it.

21      I think we're all in agreement that Agent Woolley does not

22  need to be here at the hearing, which I believe the Court is

23  going to move to May 30.

24          MR. MCLANE:  That's fine.

25          THE COURT:  As long as it's all right with you all.

|  |  |
|---|---|
| 1 | MR. MCLANE:  That's fine.  I think it's Agent Monas, |
| 2 | he's the one who entered into the contract with the informant |
| 3 | and was the handler, so my focus is asking him questions, Your |
| 4 | Honor. |
| 5 | THE COURT:  He's from Indio? |
| 6 | MR. PETERSON:  He works for the Riverside County |
| 7 | District Attorney's Office, Your Honor. |
| 8 | THE COURT:  Okay. |
| 9 | MR. MCLANE:  Now, if the Court wants to handle the |
| 10 | other motions in limine now or it wants to wait until May 30th, |
| 11 | whatever the Court prefers? |
| 12 | THE COURT:  You have got about six minutes.  How |
| 13 | much do you think we can accomplish in six minutes? |
| 14 | MR. SOLIS:  Just grant all of the defense motions. |
| 15 | THE COURT:  That is one option.  There is another. |
| 16 | MR. SOLIS:  I think the remainder of the motions |
| 17 | will be fairly discreet.  I think we can handle them all on the |
| 18 | 30th. |
| 19 | THE COURT:  Will do.  Thank you all. |
| 20 | MR. MCLANE:  If the Court could order Mr. Carmona |
| 21 | for the 30th, that would be great, Your Honor. |
| 22 | Thank you. |
| 23 | THE COURT:  All right. |
| 24 | MR. SOLIS:  Could I have one moment? |
| 25 | (Pause in the proceedings.) |

09:54AM (line 5)
09:55AM (line 10)
09:55AM (line 15)
09:55AM (line 20)
09:55AM (line 25)

1        MR. SOLIS:  Your Honor, can I approach your clerk?

2        THE COURT:  Gentleman, you can take these three.

3        MR. PETERSON:  Thank you very much, Your Honor.

4

5            (Proceedings concluded at 9:57 a.m.)

6                    *  *  *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF OFFICIAL REPORTER**

COUNTY OF LOS ANGELES    )
                         )
STATE OF CALIFORNIA      )

        I, TERRI A. HOURIGAN, Federal Official Realtime Court Reporter, in and for the United States District Court for the Central District of California, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the judicial conference of the United States.

Date:  October 29, 2019

                      /s/ TERRI A. HOURIGAN
                _____
                TERRI A. HOURIGAN, CSR NO. 3838, CCRR
                  Federal Official Court Reporter